C. Colkett Wilson and Emily R. A. Wilson, his wife, in right of said Emily R. A. Wilson, *v.* Joseph W. Anderson and Corona B. Anderson, Appellants.

*Trust and trustees—Voluntary deed of trust—Spendthrift trust—Revocation—Testamentary disposition of property.*

If the intention of the grantor at the time he delivers a voluntary deed of trust is to part with the legal title the trust will be enforced in favor of the beneficiaries, even though their enjoyment of the estate is postponed

| 186 | 531 |
| 193 | 491 |
| f193 | 492 |
| f193 | 494 |
| f194 | 391 |
| 186 | 531 |
| f196 | 37 |
| 186 | 531 |
| 199 | 365 |
| 186 | 531 |
| 202 | ¹563 |
| 186 | 531 |
| f30SC²218 |

until the death of their benefactor. Equity, because of exceptional facts in rare cases, has revoked the trust or held it revocable by the grantor, because plainly a testamentary instrument; but the general rule has remained without change.

A man twenty-six years old, of intemperate and improvident habits, executed to his brother a voluntary deed of trust of an interest which the settlor had in his father's estate. The trustee was to collect the income and pay it over, less expenses, to the grantor during the latter's lifetime, and after the death of the grantor the trustee was to convey the land to the grantor's brothers and sisters. Power to convey was given to the trustee, but it was provided that the proceeds of sales should be invested and held for the purposes of the trust. The deed contained no power of revocation. The grantor had considerable property apart from that covered by the deed of trust. Nine years afterwards the grantor executed a will by which after directing payment of debts he devised and bequeathed all the rest and residue of his estate to a brother and a sister, and by express words revoked all former wills theretofore by him made. The settlor lived eighteen years after the execution of the will, but during all this time the grantor and the trustee continued acting under the deed of trust, and treating it as in full force. After the settlor's death the trustee filed his account. *Held*, that the will did not revoke the deed of trust; (2) that the deed of trust by its terms and purpose was not revocable by any subsequent will.

*Evidence—Declarations—Deed of trust.*

Loose declarations of a grantor in a voluntary deed of trust made twenty years after the date of the deed, and tending to impeach it, are inadmissible.

Argued Feb. 1, 1898. Appeal, No. 410, Jan. T., 1897, by defendants, from decree of C. P. Montgomery Co., June T., 1896, No. 9, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Affirmed.

Bill in equity for partition. Before SWARTZ, P. J., and WEAND, J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* among others was in not dismissing the bill.

*J. Whittaker Thompson*, and *N. H. Larzelere*, for appellants.— This conveyance was purely voluntary and without consideration. No present interest under it is vested in any person during the grantor's lifetime, and it only appoints what

is to be done after his death: Turner v. Scott, 51 Pa. 126; Frew v. Clarke, 80 Pa. 170; Wilson v. Van Leer, 103 Pa. 600; Tozer v. Jackson, 164 Pa. 373; Nace v. Boyer, 30 Pa. 99; Rife's App., 110 Pa. 232; Mack's App., 68 Pa. 231; Fellows's App., 93 Pa. 470; Merriman v. Munson, 134 Pa. 114; Reidy v. Small, 154 Pa. 505; Ritter's App., 59 Pa. 9; Cable v. Cable, 146 Pa. 451; Neal v. Black, 177 Pa. 83; Wolford v. Morgenthal, 91 Pa. 30; Dreisbach v. Serfass, 126 Pa. 32; Scott v. Scott, 70 Pa. 244; Jordan v. McClure, 85 Pa. 495; Meck's Appeal, 97 Pa. 313.

The will of 1887 revokes the testamentary provisions of the deed: Hancock's App., 112 Pa. 532; Ellis's App., 22 W. N. C. 135; Weidman's App., 42 Legal Int. 338; Magee's Est., 30 W. N. C. 478.

*Louis M. Childs*, with him *Montgomery Evans*, for appellees. —It is well settled that a man can, by conveyance to a trustee or by a declaration of trust, divest himself of the ownership of property, even though it be voluntary, and although he reserve a life interest to himself, and the beneficial interest passing to others be postponed in enjoyment, or even in vesting, until after his death, provided that such intention can be gathered from the instrument and the circumstances and action of the settlor respecting it, and it requires no further action on the part of the settlor to complete it. Under these circumstances the postponement of the enjoyment, or vesting until his death does not make the instrument testamentary: Greenfield's Est., 14 Pa. 489; Brown v. Mattocks, 103 Pa. 16; Knowlson v. Fleming, 165 Pa. 10; Cable v. Cable, 146 Pa. 451; Ash's Appeal, 80 Pa. 497; Ashhurst's App., 77 Pa. 464; 1 Jarman on Wills (5th Am. ed.), 26, and note on page 43; Belknap v. Belknap, 128 Mass. 14; Fortescue v. Barnett, 3 M. & K. 36; Kekewich v. Manning, 1 DeG., M. & Gordon, 176; Ellison v. Ellison, 6 Ves. 656; Solms v. Phila. Trust Co., 16 W. N. C. 80.

The reservation of a power of revocation does not make the instrument testamentary: Dickerson's App., 115 Pa. 198; Stone v. Hackett, 12 Gray, 227.

If the trust was in the nature of a spendthrift trust, or to protect against improvidence or incompetency, it was not revocable: Reidy v. Small, 154 Pa. 505; Merriman v. Munson, 134 Pa.

114; Patrick v. Bingaman, 2 Pa. Superior Ct. 113; Neal v. Black, 177 Pa. 83.

The will of 1877, is not a revocation of the deed, and even if a power of revocation had been specifically reserved it would not have had that effect: Lines v. Lines, 142 Pa. 149; Rick's App., 105 Pa. 528.

OPINION BY MR. JUSTICE DEAN, July 21, 1898:

In 1858, Dr. James Anderson died, leaving to survive him, a widow, who was his second wife, and children by her, as follows: Joseph W. Anderson, John F., A. Jackson, Ultimus Adjutor and Corona B. By his last will he devised all his land in Montgomery county, consisting of about 100 acres, at what is now Ardmore in that county, with the personal property on it, to his widow for life, and at her death to his two sons, John F. and Ultimus Adjutor. All his other estate, which was considerable, was given in equal shares to all his children. The widow declined to take under the will, and after some litigation a family settlement was had by which the Ardmore land passed to John F. and Ultimus Adjutor, subject to a dower interest of one third to their mother for life. Afterwards, in 1866, John F. Anderson conveyed his interest in the Ardmore tract to his brother, Dr. Joseph W. Anderson. On April 8, 1868, Ultimus Adjutor conveyed his undivided half to his brother, in trust, as follows:

1. Joseph to collect the income, and pay it over, less expenses, to the grantor during his lifetime.

2. After the death of the grantor, to convey the land to his brothers and sisters of the whole blood, or if any were deceased, then to their descendants in equal shares per stirpes.

3. The trustee to convey during the life of the grantor, with his written consent, any part or the whole of the land; the proceeds of such sales to be invested or held for the purposes of the trust.

The deed contained no power of revocation. Ultimus Adjutor did not marry; with his brother Joseph and his sister, Corona, he lived on the property until his death, December 28, 1895.

His brother managed the property in the mean time and, so far as appears, kept account of and paid over the income. Sales were made also of small parts of the land in lots by the trustee,

and Ultimus Adjutor signified his approval by formally, in writing, assenting to the conveyances.   He had other property outside the land, of the value probably, of five to seven thousand dollars.   At his death, the land had greatly appreciated in value, and was worth then about $150,000.

About nine years after the date of the trust deed, in February, 1877, Ultimus Adjutor formally executed a will, in which, after directing payment of his debts and funeral expenses, he devised and bequeathed all the rest and residue of his estate to his brother, Joseph W., his trustee in the deed, and to his sister Corona, and appointed them his executors ; further, by express words, revoked all former wills by him theretofore made.   The will was proved, and letters thereon issued after the death of testator.   About a year afterwards, on petition of this plaintiff, Mrs. Wilson, a daughter of A. J. Anderson, one of the beneficiaries of the trust, averring the liability of Joseph W. to account as trustee up until the death of Ultimus Adjutor, a citation was issued to him to file his account ; he answered, by admitting his accountability, but prayed for time, and afterwards did file his account as trustee up until 1890.   Not long after, Mrs. Wilson filed this bill against Joseph W., the trustee, and Corona Anderson, averring the trust deed, the death of her father and John F. Anderson, and praying for partition. The defendants filed answer, admitting the execution of the trust deed, but averring that it was made by Ultimus Adjutor at the suggestion of A. J. Anderson, who had neglected to advise him of the importance of inserting a power of revocation, and that the grantor never had surrendered possession or power over the property to the trustee, the latter being a mere agent for his brother ; then averred the will revoked the deed, and that no estate passed to plaintiff by reason of the provisions of the latter, but that the entire interest in the land passed by the will to defendants.   This constituted, in substance, the issue between the parties.   After full hearing and consideration of all the evidence, the court below concluded that the deed was made with a full knowledge of its effect, and was a conveyance in the nature of a spendthrift trust, irrevocable, and not a testamentary disposition of the settlor's property ; that by the will there was no intention to revoke the prior deed, even if the latter was testamentary.

Two very material facts in aid of this construction of the papers are found by the court; first, that the deed was prompted by intemperate and improvident habits of the grantor at the date of it, when he was a young man, only twenty-six years of age, which habits continued without reformation until his death twenty-eight years afterwards. Second, that, at the dates of both deed and will, he was possessed of very considerale property, both real and personal, on which the will would operate without affecting the grant specified in the deed.

The appellant alleges manifest error in both these findings of fact. But we think, taking into view the other evidence in the case, with the testimony of Dr. Joseph W. Anderson, one of the respondents, it is sufficient to establish both findings. These being facts, the only question remaining under the assignments of error is, were the legal conclusions warranted? On the answer to this interrogatory hinges appellants' case.

The deed contains no power of revocation; by its terms, the legal estate at once vested in the trustee, with a power of alienation, subject to the approval of the settlor, but no power to convey by the settlor himself was reserved; nor in case of conveyance of the whole or any part of the land were the proceeds to pass to the control of the grantor; on the contrary, by its express terms, the subject of the trust was still to remain in the hands of the trustee for investment and reinvestment to abide the purpose of the trust; there was an absolute vesting of the equitable estate in his brothers and sister, subject only to his life enjoyment of the income. This estate did not depend on a contingency, something which might or might not happen; the commencement of the period of enjoyment was uncertain, only because, while the fact of his death was certain, the date of it was not. A present equitable title vested in the beneficiaries immediately, which in the future would merge with the legal title, which latter was to be conveyed to them on the grantor's death. Every word in the deed is an apt one, as expressing a present intention to irrevocably convey a present estate to be enjoyed in the future. There is no ambulatory quality in a deed; the postponement of enjoyment does not make the instrument ambulatory, when such postponement is in express terms, and does not result from the nature of the instrument. A will is ambulatory, revocable, subject to change,

because it is a will, and takes effect only at death of testator; a deed takes effect when delivered to the grantee. And the estate granted vests at once in the beneficiaries in the absence of negative words, even if the period of enjoyment be postponed. In this case. the grantor could have reserved a power of revocation; but he did not. Considering the absence of this power, in connection with the motive which prompted the execution of the deed and the language of it, we think the court was clearly right in its conclusion that the instrument was an irrevocable deed, and intended to be such by the grantor. The case relied on by the appellant as determining that this deed should be construed a will (Frederick's Appeal, 52 Pa. 338), does not by any means hold that a deed of trust reserving to the grantor the income of the trust estate for life, and postponing until his death the enjoyment by the beneficiaries of the principal, is necessarily testamentary without regard to the manifest intent of the grantor. The decision in that case proceeds wholly upon an ascertainment of the intention of the testator from the instrument itself. After a careful analysis of the expressed purpose, in view of the surroundings, and the fact that during his lifetime the grantor had by a second formal deed revoked the first, a subsequent testamentary disposition was sustained. The deed was not made to preserve the estate of the grantor from depletion by vicious habits; from his express language, it was made for his own convenience merely. He was old and feeble, and, in the preamble to the deed declares that it is made to exempt him from the vexation of management and sales of his property to pay debts; therefore, he appoints three trustees, who are to make sales of his land, apply the money received to his debts, account to him annually, and any balance remaining in their hands is to be securely invested; the grantor to be maintained therefrom during his life, and any balance remaining at his death to be divided equally among his children. The deed was not intended by the grantor to be irrevocable; that there would be any estate for the children at the grantor's death was altogether uncertain, for that depended on the value of the estate, amount of his debts, the expenses of administration and the cost of his support during the remainder of his life.

Chief Justice Woodward, who rendered the opinion, expressly says he declines to consider the authorities bearing on the

subject of voluntary trusts, because the deed was made for the grantor's personal convenience merely, and therefore revocable. He follows this with the remark that " a disposition of property to take effect after the grantor's death is testamentary, and therefore revocable;" but this was unnecessary in the disposition of the case, for it was the very subject, that is, whether it was a testamentary disposition of the property, or an irrevocable trust deed, which he had declined to discuss or consider in the former part of his opinion. A careful reading of the opinion will show, that the judgment was based on the fact that the deed was made wholly for the convenience of the grantor, in that, it relieved him from the management of his estate. Besides, there was nothing in the deed itself, or in the circumstances attending its execution, manifesting an intention that it should be irrevocable. On its peculiar facts that case stands by itself; it is not authority, as argued by appellant, for the sweeping proposition that every voluntary trust conveyance of property which reserves to the grantor a life interest, with a direction to convey to others the principal of the estate at his death, is a testamentary instrument, and therefore revocable by a subsequent will.

In Rick's Appeal, 105 Pa. 528, also cited by appellant, the decision is rested on the ground that the deed was obtained by undue solicitation from an aged woman on the part of the beneficiary, and was actually improvident. In Rife's Appeal, 110 Pa. 232, also cited by appellant, the intent of the testator that the instrument, in form a deed, should constitute his will in case he made none other, is manifested by his language in the deed. The decision in Bank v. Insurance Co., 186 Pa. 333, is put upon the ground that testatrix intended the instrument to be revocable, and, if she had been advised of its importance, would have inserted a power of revocation.

We do not favor an extension of the doctrine of Frederick's Appeal, supra, an exceptional case, to cases not clearly within it on their facts. The general rule, commencing with Reese v. Ruth, 13 S. & R. 435, and adhered to through all the subsequent cases of voluntary deeds of trust intended to be irrevocable by the grantor, is the one within which falls this case. In the case last cited the grantor, because of intemperate habits, conveyed all her property to trustees, reserving to herself such

comfortable support therefrom during life as the trustees should judge proper; to be transferred after her decease to such parties as she might by will appoint, and in default of appointment to such persons as by law were entitled thereto. Alleging failure on part of trustees to support her, she sought to annul the deed; this Court held she could not avoid the deed unless fraudulently procured; nevertheless, holding that she could recover for her support. This was followed by Greenfield's Estate, 14 Pa. 489. There an absolute deed was accompanied by a declaration of trust on part of the grantees that they held the same to apply the income as directed by the grantor during her life, and at her death to apply proceeds of the trust property to payment of certain legacies and annuities. The trustees took charge of the estate under the trust and managed it from the date of the deed, December 15, 1834, until her death, on July 9, 1845. About two years before her death she executed a will making a different disposition of her property than provided in the trust, of which will she appointed an executor, who filed bill against the trustees to have the trust declared void, among other complaints, alleging the deed and declaration of trust constituted a testamentary disposition of her estate which was revoked by the subsequent formal will. The case was heard by GIBSON, C. J., at nisi prius, who, as to this averment, speaks thus: "As to its being in fact a testamentary act, and therefore revocable, the argument is scarcely worth an answer. 'Tis true, a deed containing a posthumous disposition has been proved as a will; but here the trust was not entirely posthumous, for the legal title was vested in the trustee in order to let them manage the property in her lifetime, and to pay as much of the produce as she might desire into her hands. There was nothing testamentary in that. But according to all the proofs, the very object of resorting to a trust deed was to make disposition unalterable. And if the owner of property cannot tie up his hands in regard to it, by such an instrument, he cannot do it at all." On appeal to this Court, these remarks were approved, and it was said there was not " the slightest pretence for saying that the settlement must be accepted as a testamentary disposition." This case has been followed in a large number of cases since, down to Knowlson v. Fleming, 165 Pa. 10. The general rule is that if the intention of the grantor at the time he delivered

the deed was to part with the legal title, the trust will be enforced in favor of the beneficiaries, even though their enjoyment of the estate is postponed until the death of their benefactor. Equity, because of exceptional facts in rare cases, has revoked the trust, or held it revocable by the grantor, because plainly a testamentary instrument; but, the general rule has remained without change.

But not only is this instrument by its terms and purpose not revocable by a subsequent will, but it is manifest the grantor never intended to revoke it. After its execution in 1869, for a period of nine years, both grantor and trustee acted under it, assuming it was a deed; then, on February 7, 1877, the grantor made a will, in which he devises and bequeaths, after payment of debts and funeral expenses, all the rest and residue of his estate to these two defendants, and declares, " I hereby revoke all other wills at any time by me heretofore made." Plainly, by his conduct he had not considered the first instrument a will, but a deed; but he also indicates by the absence of any mention of it, an absence of intention to revoke it. But still further, he and his trustee, after this alleged revocation, go on for eighteen years, until the grantor's death, acting under this revoked deed, and treating it as in full force; even after his death, when cited, the trustee files his account as if the trust continued in existence up until the grantor's death. An intention not to revoke could not have been manifested by more significant conduct. But as further indicating that the grantor intended the deed and will as distinct and separate instruments, operating on different property, the court, on ample evidence, has found as a fact, that the grantor was possessed of both real and personal estate not covered by the deed, to the value of between five and seven thousand dollars; hence, in view of all the facts and the expressions of both instruments, is it not obvious, that he intended the will not to revoke the deed which had disposed of the particular land described in it, but to operate only on that property which was still in his power.

We think, in an impartial view of the testimony and the law, the decree of the learned judge of the court below was right.

As to the assignments of error covering the rejection of testimony of Joseph W. Anderson and his sister Corona, as con-

cerns that of Joseph, the objection was withdrawn and the testimony considered by the court. The testimony of Corona, without regard to her competency or incompetency as a witness, was inadmissible, because it consisted of loose declarations of the grantor, made twenty years after the date of the deed, and tending to impeach it. Such testimony is inadmissible.

All the assignments of error are overruled, and the decree affirmed at costs of appellant.