CURRY, STATE TAX COMMISSIONER OF ALABAMA, ET AL. *v.* McCANLESS, COMMISSIONER OF FINANCE AND TAXATION OF TENNESSEE.

No. 339. Argued January 9, 1939. Reargued April 28, 1939.— Decided May 29, 1939.

*Mr. Marion Rushton* on the reargument, and with *Mr. Chas. C. Trabue, Jr.* on the original argument, for appellants. *Messrs. A. A. Carmichael,* Attorney General of Alabama, *Ray Rushton,* and *Walter Knabe* were with them on the brief.

*Mr. Edwin F. Hunt* on the reargument and on the original argument for appellee.

MR. JUSTICE STONE delivered the opinion of the Court.

The questions for decision are whether the States of Alabama and Tennessee may each constitutionally impose death taxes upon the transfer of an interest in intangibles held in trust by an Alabama trustee but passing under the will of a beneficiary decedent domiciled in Tennessee; and which of the two states may tax in the event that it is determined that only one state may constitutionally impose the tax.

Decedent, a domiciled resident of Tennessee, by trust indenture transferred certain stocks and bonds upon specified trusts to Title Guarantee Loan & Trust Company, an Alabama corporation doing business in that state. So far as now material, the indenture provided that the net income of the trust property should be paid over to decedent during her lifetime. She reserved the power to remove the trustee and substitute another, which was never done; the power to direct the sale of the trust property and the investment of the proceeds; and the power to dispose of the trust estate by her last will and testament, in which event it was to be "handled and disposed of as directed" in her will. The indenture provided further that in default of disposition by will the property was to be held in trust for the benefit of her husband, son, and daughter. Until decedent's death the trust was administered by the trust company in Alabama and the

paper evidences of the intangibles held by the trustee were at all times located in Alabama.

By her last will and testament decedent bequeathed the trust property to the trust company in trust for the benefit of her husband, son, and daughter, in different amounts and by different estates from those provided for by the trust indenture, with remainder interests over to the children of the son and the daughter respectively, and to his wife and her husband. By her will testatrix appointed a Tennessee trust company executor "as to all property which I may own in the State of Tennessee at the time of my death," and an Alabama trust company executor "as to all property which I may own in the State of Alabama and also as to all property which I may have the right to dispose of by last will and testament in said state." The will has been probated in Tennessee and in Alabama, and letters testamentary have issued to the two trust companies named as executors in the will.

The present suit was brought by the two executors in a chancery court of Tennessee against appellants, comprising the State Tax Commission of Alabama, and appellee, Commissioner of Finance and Taxation of the State of Tennessee, who are charged with the duty of collecting inheritance or succession taxes in their respective states. The bill of complaint prayed a declaratory judgment pursuant to the Tennessee Declaratory Judgments Act, Tennessee Code, 1932, §§ 8835–8847, determining what portions of the estate of decedent are taxable by the State of Tennessee and what portions by the State of Alabama. Appellants and appellee appeared and by their answers and by stipulation recited in detail the facts already stated and admitted that the taxing officials of each state had imposed or asserted the right to impose an inheritance or death transfer tax on the trust property passing under decedent's will.

The chancery court of Tennessee decreed that the State of Alabama could lawfully impose the tax and that the inheritance tax law of Tennessee violated the Fourteenth Amendment in so far as it purported to impose a tax measured by the trust property disposed of by decedent's will. The Supreme Court of Tennessee reversed, and entered its decree declaring the trust property disposed of by decedent's will to be "taxable in Tennessee and not taxable in Alabama for purposes of death succession or transfer taxes." 174 Tenn. 1; 118 S. W. 2d 228. The case comes here on an appeal from this decree taken by the taxing officials of Alabama under § 237 (a) of the Judicial Code, 28 U. S. C. § 344 (a).

Alabama has assessed a state inheritance tax on the trust property pursuant to Article XII, c. 2, of its General Revenue Act. Alabama Acts, 1935, pp. 434 *et seq.* No transfer tax has been assessed upon the property by the Tennessee taxing officials, but they assert the right under the Tennessee statute to tax the transfer under decedent's will of the trust property. Sections 1259 and 1260 of the Tennessee Code of 1932 impose a tax upon the transfer at death by a resident of the state of his intangible property wherever located, including transfers under powers of appointment.

Both the court of chancery of Tennessee and the Supreme Court of Tennessee, conceiving that the Fourteenth Amendment requires the transmission at death of intangibles to be taxed at their "situs" and there only, considered that the primary question for determination was the situs or location to be attributed to the intangibles of the trust estate at the time of decedent's death. After considering all of the relevant factors, the one court concluded that the situs of the intangibles was in Alabama, the other that it was in Tennessee. Despite the impossibility in the circumstances of this case of attributing a single location to that which has no physical

characteristics and which is associated in numerous intimate ways with both states, both courts have agreed that the Fourteenth Amendment compels the attribution to be made and that, once it is established by judicial pronouncement that the intangibles are in one state rather than the other, the due proces clause forbids their taxation in any other.

The doctrine, of recent origin, that the Fourteenth Amendment precludes the taxation of any interest in the same intangible in more than one state has received support to the limited extent that it was applied in *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204; *Baldwin* v. *Missouri,* 281 U. S. 586; *First National Bank* v. *Maine,* 284 U. S. 312. Still more recently this Court has declined to give it completely logical application.[1] It has never been pressed to the extreme now urged upon us, and we think that neither reason nor authority requires its acceptance in the circumstances of the present case.

That rights in tangibles—land and chattels—are to be regarded in many respects as localized at the place where the tangible itself is located for purposes of the jurisdiction of a court to make disposition of putative rights in them, for purposes of conflict of laws, and for purposes of taxation, is a doctrine generally accepted both in the common law and other legal systems before the adoption of the Fourteenth Amendment and since.[2]

---

[1] See, in the case of income taxation, *Lawrence* v. *State Tax Comm'n,* 286 U. S. 276; *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308; *Guaranty Trust Co.* v. *Virginia,* 305 U. S. 19; cf. *Senior* v. *Braden,* 295 U. S. 422, 431–432. And in the case of taxation of shares of stock, see *Corry* v. *Baltimore,* 196 U. S. 466; *First Bank Stock Corp.* v. *Minnesota,* 301 U. S. 234, 239–240; *Schuylkill Trust Co.* v. *Pennsylvania,* 302 U. S. 506, 514–516.

[2] *Green* v. *Van Buskirk,* 5 Wall. 307; 7 Wall. 139; *Pennoyer* v. *Neff,* 95 U. S. 714; *Arndt* v. *Griggs,* 134 U. S. 316; *Fall* v. *Eastin,* 215 U. S. 1; *Olmsted* v. *Olmsted,* 216 U. S. 386; *United States* v. *Guaranty Trust Co.,* 293 U. S. 340, 345–346; *Paddell* v. *City of New*

Originating, it has been thought, in the tendency of the mind to identify rights with their physical subjects, see Salmond, Jurisprudence (2nd ed.) 398, its survival and the consequent cleavage between the rules of law applicable to tangibles and those relating to intangibles are attributable to the exclusive dominion exerted over the tangibles themselves by the government within whose territorial limits they are found. *Green* v. *Van Buskirk,* 7 Wall. 139, 150; *Pennoyer* v. *Neff,* 95 U. S. 714; *Arndt* v. *Griggs,* 134 U. S. 316, 320–321. See *McDonald* v. *Mabee,* 243 U. S. 90, 91; cf. *Harris* v. *Balk,* 198 U. S. 215, 222; *Frick* v. *Pennsylvania, supra,* 497. The power of government and its agencies to possess and to exclude others from possessing tangibles, and thus to exclude them from enjoying rights in tangibles located within its territory, affords adequate basis for an exclusive taxing jurisdiction. When we speak of the jurisdiction to tax land or chattels as being exclusively in the state where they are physically located, we mean no more than that the benefit and protection of laws enabling the owner to enjoy the fruits of his ownership and the power to reach effectively the interests protected, for the purpose of subjecting them to payment of a tax, are so narrowly restricted to the state in whose territory the physical property is located as to set practical limits to taxation by others. Other states have been said to be without jurisdiction and so without constitutional power to tax tangibles if, because of their location elsewhere, those states can afford no substantial protection to the rights taxed and cannot effectively lay hold of any interest in the

*York,* 211 U. S. 446; *St. Louis* v. *Ferry Co.,* 11 Wall. 423, 430; *Frick* v. *Pennsylvania,* 268 U. S. 473; see Story, Conflict of Laws (8th ed.), §§ 550, 551; Dicey, Conflict of Laws (5th ed.), pp. 418, *et seq.,* 583 *et seq.,* 606 *et seq.;* 1 Beale, Conflict of Laws, § 48.1 *et seq.;* American Law Institute, Restatement of Conflict of Laws, §§ 48, 49; 2 Cooley, Taxation (4th ed.), §§ 447, 451.

property in order to compel payment of the tax. See *Union Transit Co.* v. *Kentucky,* 199 U. S. 194, 202; *Frick* v. *Pennsylvania,* 268.U. S. 473, 489 *et seq.*[3]

Very different considerations, both theoretical and practical, apply to the taxation of intangibles, that is, rights which are not related to physical things. Such

[3] But there are many legal interests other than conventional owner-ship which may be created with respect to land of such a character that they may be constitutionally subjected to taxation in states other than that where the land is situated. No one has doubted the constitutional power of a state to tax its domiciled residents on their shares of stock in a foreign corporation whose only property is real estate located elsewhere, *Darnell* v. *Indiana,* 226 U. S. 390; *Hawley* v. *Malden,* 232 U. S. 1; cf. *Kidd* v. *Alabama,* 188 U. S. 730; *Corry* v. *Baltimore,* 196 U. S. 466; *Cream of Wheat Co.* v. *County of Grand Forks,* 253 U. S. 325, 329; *Schuylkill Trust Co.* v. *Pennsylvania,* 302 U. S. 506, 514–516, or to tax a valuable contract for the purchase of land or chattels located in another state, see *Citizens National Bank* v. *Durr,* 257 U. S. 99, 108; cf. *Gish* v. *Shaver,* 140 Ky. 647, 650; 131 S. W. 515; *Golden* v. *Munsinger,* 91 Kan. 820, 823; 139 P. 379; *Marquette* v. *Michigan Iron & Land Co.,* 132 Mich. 130; 92 N. W. 934, or to tax a mortgage of real estate located without the state, even though the land affords the only source of payment, see *Kirtland* v. *Hotchkiss,* 100 U. S. 491; cf. *Savings & Loan Society* v. *Multnomah County,* 169 U. S. 421; *Bristol* v. *Washington County,* 177 U. S. 133; *Paddell* v. *New York,* 211 U. S. 446. Each of these legal interests finds its only economic source in the value of the land, and the rights which are elsewhere subjected to the tax can be brought to their ultimate fruition only through some means of control of the land itself. But the means of control may be subjected to taxation in the state of its owner whether it be a share of stock or a contract or a mortgage. There is no want of jurisdiction to tax these interests where they are owned in the sense that the state lacks power to appropriate them to the payment of the tax. No court has condemned such action as so capricious, arbitrary or oppressive as to bring it within the prohibition of the Fourteenth Amendment, for it is universally recognized that these interests are of themselves in some measure clothed with the legal incidents of property enjoyed by their owner, in the state where he resides, through the benefit and protection of its laws.

rights are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights. See *Chicago, R. I. & P. Ry. Co.* v. *Sturm,* 174 U. S. 710, 716; *Harris* v. *Balk,* 198 U. S. 215, 222. Obviously, as sources of actual or potential wealth—which is an appropriate measure of any tax imposed on ownership or its exercise—they cannot be dissociated from the persons from whose relationships they are derived. These are not in any sense fictions. They are indisputable realities.

The power to tax "is an incident of sovereignty, and is co-extensive with that to which it is an incident. All subjects over which the sovereign power of a state extends, are objects of taxation; but those over which it does not extend, are, upon the soundest principles, exempt from taxation." *McCulloch* v. *Maryland,* 4 Wheat. 316, 429. But this does not mean that the sovereign power of the state does not extend over intangibles of a domiciled resident because they have no physical location within its territory, or that its power to tax is lost because we may choose to say they are located elsewhere. A jurisdiction which does not depend on physical presence within the state is not lost by declaring that it is absent. From the beginning of our constitutional system control over the person at the place of his domicile and his duty there, common to all citizens, to contribute to the support of government have been deemed to afford an adequate constitutional basis for imposing on him a tax on the use and enjoyment of rights in intangibles measured by their value. Until this moment that jurisdiction has not been thought to depend on any factor other than the domicile

of the owner within the taxing state, or to compel the attribution to intangibles of a physical presence within its territory, as though they were chattels, in order to support the tax. *Carpenter* v. *Pennsylvania,* 17 How. 456; *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *Hawley* v. *Malden,* 232 U. S. 1; *Bullen* v. *Wisconsin,* 240 U. S. 625; *Cream of Wheat Co.* v. *Grand Forks,* 253 U. S. 325; *Blodgett* v. *Silberman,* 277 U. S. 1; *Farmers Loan & Trust Co.* v. *Minnesota, supra; Baldwin v. Missouri, supra; Beidler* v. *South Carolina,* 282 U. S. 1; *First National Bank* v. *Maine, supra; Virginia.* v. *Imperial Coal Sales Co.,* 293 U. S. 15; *Schuylkill Trust Co.* v. *Pennsylvania,* 302 U. S. 506.

In cases where the owner of intangibles confines his activity to the place of his domicile it has been found convenient to substitute a rule for a reason, cf. *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308, 313; *First Bank Stock Corp.* v. *Minnesota,* 301 U. S. 234, 241, by saying that his intangibles are taxed at their situs and not elsewhere, or, perhaps less artificially, by invoking the maxim *mobilia sequuntur personam, Blodgett* v. *Silberman, supra; Baldwin* v. *Missouri, supra,* which means only that it is the identity or association of intangibles with the person of their owner at his domicile which gives jurisdiction to tax. But when the taxpayer extends his activities with respect to his intangibles, so as to avail himself of the protection and benefit of the laws of another state, in such a way as to bring his person or property within the reach of the tax gatherer there, the reason for a single place of taxation no longer obtains, and the rule is not even a workable substitute for the reasons which may exist in any particular case to support the constitutional power of each state concerned to tax. Whether we regard the right of a state to tax as founded on power over the object taxed, as declared by Chief Justice Marshall in *McCulloch* v. *Maryland, supra,*

through dominion over tangibles or over persons whose relationships are the source of intangible rights; or on the benefit and protection conferred by the taxing sovereignty, or both, it is undeniable that the state of domicile is not deprived, by the taxpayer's activities elsewhere, of its constitutional jurisdiction to tax, and consequently that there are many circumstances in which more than one state may have jurisdiction to impose a tax and measure it by some or all of the taxpayer's intangibles. Shares of corporate stock may be taxed at the domicile of the shareholder and also at that of the corporation which the taxing state has created and controls; and income may be taxed both by the state where it is earned and by the state of the recipient's domicile.[4] Protection, benefit, and power over the subject matter are not confined to either state. The taxpayer who is domiciled in one state but carries on business in another is subject to a tax there measured by the value of the intangibles used in his business. *New Orleans* v. *Stempel,* 175 U. S. 309; *Bristol* v. *Washington County,* 177 U. S. 133; *State Board of Assessors* v. *Comptoir National,* 191 U. S. 388; *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395; *Liverpool & L. & G. Ins. Co.* v. *Board,* 221 U. S. 346; *Wheeling Steel Corp.* v. *Fox,* 298 U. S. 193; cf. *Blodgett* v. *Silberman, supra; Baldwin* v. *Missouri, supra.* But taxation of a corporation by a state where it does business, measured by the value of the intangibles used in its business there, does not preclude the state of incorporation from imposing a tax measured by all its intangibles. *Cream of Wheat Co.* v. *Grand Forks, supra,* 329;[5] see *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54.

The practical obstacles and unwarranted curtailments of state power which may be involved in attempting to

---

[4] See Footnote 1, *ante.*

[5] See also Footnote 2, *ante.*

prevent the taxation of diverse legal interests in intangibles in more than a single place, through first ascribing to them a fictitious situs and then invoking the prohibition of the Fourteenth Amendment against their taxation elsewhere, are exemplified by the circumstances of the present case. Here, for reasons of her own, the testatrix, although domiciled in Tennessee and enjoying the benefits of its laws, found it advantageous to create a trust of intangibles in Alabama by vesting legal title to the intangibles and limited powers of control over them in an Alabama trustee. But she also provided that by resort to her power to dispose of property by will, conferred upon her by the law of the domicile, the trust could be terminated and the property pass under the will. She thus created two sets of legal relationships resulting in distinct intangible rights, the one embodied in the legal ownership by the Alabama trustee of the intangibles, the other embodied in the equitable right of the decedent to control the action of the trustee with respect to the trust property and to compel it to pay over to her the income during her life, and in her power to dispose of the property at death.

Even if we could rightly regard these various and distinct legal interests, springing from distinct relationships, as a composite unitary interest and ascribe to it a single location in space, it is difficult to see how it could be said to be more in one state than in the other and upon what articulate principle the Fourteenth Amendment could be thought to have withdrawn from either state the taxing jurisdiction which it undoubtedly possessed before the adoption of the Amendment by conferring on one state, at the expense of the other, exclusive jurisdiction to tax. See *Paddell* v. *City of New York*, 211 U. S. 446, 448. If the "due process" of the Fifth Amendment does not require us to fix a single exclusive place of taxation of intangibles for the benefit of their foreign owner, who is

entitled to its protection, *Burnet* v. *Brooks*, 288 U. S. 378; cf. *Russian Volunteer Fleet* v. *United States*, 282 U. S. 481, 489, the Fourteenth can hardly be thought to make us do so here, for the due process clause of each amendment is directed at the protection of the individual and he is entitled to its immunity as much against the state as against the national government.

If taxation is but a means of distributing the cost of government among those who are subject to its control and who enjoy the protection of its laws, see *New York ex rel. Cohn* v. *Graves, supra,* 313; *First Bank Stock Corp.* v. *Minnesota, supra,* 241, legal ownership of the intangibles in Alabama by the Alabama trustee would seem to afford adequate basis for imposing on it a tax measured by their value. We can find no more ground for saying that the Fourteenth Amendment relieves it, or the property which it holds and administers in Alabama, from bearing that burden, than for saying that they are constitutionally immune from paying any other expense which normally attaches to the administration of a trust in that state. This Court has never denied the constitutional power of the trustee's domicile to subject them to property taxation. *Safe Deposit & Trust Co.* v. *Virginia,* 280 U. S. 83; see cases collected in 30 Columbia Law Rev. 530; 2 Cooley, Taxation (8th ed.), § 602. And since Alabama may lawfully tax the property in the trustee's hands, we perceive no ground for saying that the Fourteenth Amendment forbids the state to tax the transfer of it or an interest in it to another merely because the transfer was effected by decedent's testamentary act in another state.

No more plausible ground is assigned for depriving Tennessee of the power to tax in the circumstances of this case. The decedent's power to dispose of the intangibles was a potential source of wealth which was property in her hands from which she was under the highest obliga-

tion, in common with her fellow citizens of Tennessee, to contribute to the support of the government whose protection she enjoyed. Exercise of that power, which was in her complete and exclusive control in Tennessee, was made a taxable event by the statutes of the state. Taxation of it must be taken to be as much within the jurisdiction of the state as taxation of the transfer of a mortgage on land located in another state and there subject to taxation at its full value. See *Kirtland* v. *Hotchkiss, supra;* cf. *Paddell* v. *City of New York, supra.*

For purposes of taxation, a general power of appointment, of which the testatrix here was both donor and donee, has hitherto been regarded by this Court as equivalent to ownership of the property subject to the power. *Chanler* v. *Kelsey,* 205 U. S. 466; *Bullen* v. *Wisconsin, supra,* 630; *Chase National Bank* v. *United States,* 278 U. S. 327, 338; see Gray, Rule Against Perpetuities (3d ed. 1916), § 524.[6] Whether the appointee derives title from the donor, under the common law theory, or from the donee by virtue of the exercise of the power, is here immaterial. In either event the trustee's title under the will was derived from decedent, domiciled in Tennessee. Cf. *Wachovia Trust Co.* v. *Doughton,* 272 U. S. 567. There is no conflict here between the laws of the two states affecting the transmission of the trust property. The title of the trustee under the original Alabama trust came to an end upon the exercise of the testatrix's power of appointment; and although the trustee after her death still had title to the securities, it was in by a new title as legatee under her will, and a new beneficial interest was created, both derived through the exercise of her power of disposition. The resulting situation was no different from what it would have been if she had bequeathed the

---

[6] No comparable right or power resided in the beneficiaries upon whom a tax was sought to be levied in *Safe Deposit & Trust Co.* v. *Virginia,* 280 U. S. 83, 91.

intangibles upon a new trust to a new and different trustee, either within or without the state of Alabama. So far as the power of Tennessee to tax the exercise of the power of appointment is concerned, there is no substantial difference between the present case and any other case in which at the moment of death the evidences of intangibles passing under the will of a decedent domiciled in one state are physically present in another. See *Blodgett* v. *Silberman, supra; Baldwin* v. *Missouri, supra.*

It has hitherto been the accepted law of this Court that the state of domicile may constitutionally tax the exercise or non-exercise at death of a general power of appointment, by one who is both donor and donee of the power, relating to securities held in trust in another state. *Bullen* v. *Wisconsin, supra.* If it be thought that it is identity of the intangibles with the person of the owner at the place of his domicile which gives power over them and hence "jurisdiction to tax," and this is the reason underlying the maxim *mobilia sequuntur personam,* it is certain here that the intangibles for some purposes are identified with the trustee, their legal owner, at the place of its domicile and that in another and different relationship and for a different purpose—the exercise of the power of disposition at death, which is the equivalent of ownership—they are identified with the place of domicile of the testatrix, Tennessee. In effecting her purposes, the testatrix brought some of the legal interests which she created within the control of one state by selecting a trustee there and others within the control of the other state by making her domicile there. She necessarily invoked the aid of the law of both states, and her legatees, before they can secure and enjoy the benefits of succession, must invoke the law of both.

We can find nothing in the history of the Fourteenth Amendment and no support in reason, principle, or authority for saying that it prohibits either state, in the

circumstances of this case, from laying the tax. On the contrary this Court, in sustaining the tax at the place of domicile in a case like the present, has declared that both the decedent's domicile and that of the trustee are free to tax. *Bullen* v. *Wisconsin, supra,* 631; cf. *Keeney* v. *New York,* 222 U. S. 525, 537; *Guaranty Trust Co.* v. *Blodgett,* 287 U. S. 509. That has remained the law of this Court until the present moment, and we see no reason for discarding it now. We find it impossible to say that taxation of intangibles can be reduced in every case to the mere mechanical operation of locating at a single place, and there taxing, every legal interest growing out of all the complex legal relationships which may be entered into between persons. This is the case because in point of actuality those interests may be too diverse in their relationships to various taxing jurisdictions to admit of unitary treatment without discarding modes of taxation long accepted and applied before the Fourteenth Amendment was adopted, and still recognized by this Court as valid. See *Paddell* v. *New York, supra,* 448. The Fourteenth Amendment cannot be carried out with such mechanical nicety without infringing powers which we think have not yet been withdrawn from the states. We have recently declined to press to a logical extreme the doctrine that the Fourteenth Amendment may be invoked to compel the taxation of intangibles by only a single state by attributing to them a situs within that state.[7] We think it cannot be pressed so far here.

If we enjoyed the freedom of the framers it is possible that we might, in the light of experience, devise a more equitable system of taxation than that which they gave us. But we are convinced that that end cannot be attained by the device of ascribing to intangibles in every case a locus for taxation in a single state despite the

---

[7] See Footnote 1, *ante.*

multiple legal interests to which they may give rise and despite the control over them or their transmission by any other state and its legitimate interest in taxing the one or the other. While fictions are sometimes invented in order to realize the judicial conception of justice, we cannot define the constitutional guaranty in terms of a fiction so unrelated to reality without creating as many tax injustices as we would avoid and without exercising a power to remake constitutional provisions which the Constitution has not given to the courts. See *Bristol* v. *Washington County, supra,* 145; *Kidd* v. *Alabama,* 188 U. S. 730, 732, quoted with approval in *Hawley* v. *Malden, supra,* 13; *Bullen* v. *Wisconsin, supra,* 630; *Fidelity & Columbia Trust Co.* v. *Louisville, supra,* 58; *Cream of Wheat Co.* v. *Grand Forks, supra,* 330.

So far as the decree of the Supreme Court of Tennessee denies the power of Alabama to tax, it is

*Reversed.*

MR. JUSTICE REED concurs in this opinion except as to the statement that "taxation of a corporation by a state where it does business, measured by the value of the intangibles used in its business there, does not preclude the state of incorporation from imposing a tax measured by all its intangibles." Upon this point he reserves his conclusion.

MR. JUSTICE BUTLER, dissenting.

The sole question is whether, on the facts about to be stated, the Tennessee inheritance tax law, consistently with the due process clause of the Fourteenth Amendment, may be extended to intangible personal property evidenced by certificates of stock and bonds held in Alabama.

The suit was brought in a chancery court of Tennessee under the declaratory judgments act of that State.[1] Com-

---

[1] Tennessee Code, 1932, §§ 8835–8847.

plaintants were the Nashville Trust Company, a Tennessee corporation appointed by the will of Mrs. Grace C. Scales as executor for Tennessee, and the Title Guarantee Loan & Trust Company, which will be referred to as the Birmingham trust company, an Alabama corporation appointed as executor for that State. Defendants were the Commissioner of Finance and Taxation of Tennessee, and the members of the Alabama Tax Commission. The bill prayed that the court determine what portions of the estate are taxable by Tennessee and what portions are taxable by Alabama. The Tennessee commissioner filed answer praying declaration and decree that the securities held in Alabama are subject to the inheritance tax law of Tennessee.[2] The members of the Alabama commission filed their answer and a cross-bill praying decree in favor of that State and against the Birmingham trust company for the tax claimed under the laws of Alabama.[3]

[2] Tennessee Code, 1932: "Section 1259. Subdivision 1. . . . A tax is imposed . . . upon transfers, in trust or otherwise, of the following property, or any interest therein or accrued income therefrom: (a) When the transfer is from a resident of this state . . . (3) All intangible personal property . . . Section 1260. Subdivision 2. . . . The transfers enumerated in subdivsion 1 . . . shall be taxable if made—(a) By a will . . ."

[3] Alabama General Revenue Act, approved July 10, 1935, Art. XII, c. 2 (Acts 1935, pp. 434 et seq.): Section 347.1: ". . . there is hereby levied and imposed upon all net estates passing by will, devise, or under the intestate laws of the State of Alabama, or otherwise, which are lawfully subject to the imposition of an estate tax by the State of Alabama, a tax equal to the full amount of State tax paid permissible when levied by and paid to the State of Alabama as a credit or deduction in computing any federal estate tax payable by such estate according to the Act of Congress in effect, on the date of the death of the decedent, taxing such estate, with respect to the items subject to taxation in Alabama. . . ." Section 347.7: ". . . all of the provisions of this Chapter shall be applicable to so much of the estates of non-resident decedents as is subject to estate tax under the Act of Congress in effect at the time of

The parties stipulated that the facts are as stated in the pleadings. In substance they are as follows:

At all times involved in this case, Mrs. Scales was a resident of and domiciled in Tennessee. Her brother, formerly living in Alabama, died in 1905 leaving a will that bequeathed to the Birmingham trust company stocks and bonds issued by Alabama corporations to be held in trust for the use and benefit of his widow and at her death to be delivered to Mrs. Scales. The widow died in 1917. Immediately, December 29, 1917, and without taking any of them from the possession of the trust company, Mrs. Scales executed jointly with it an indenture covering the stocks and bonds of which she had become owner under her brother's will.

By paragraph 1, she transferred 50 bonds to the trust company as trustee for the use and benefit of her son and directed that it hold and manage the property and pay net income to him during his life, and that, subject to his power of disposition by will, all property belonging to the trust at the time of his death should go to his children. By paragraph 2, she transferred to the same company 50 other bonds to be held in trust for the benefit of her daughter subject to trusts, conditions, and power of testamentary appointment by her daughter like those specified in the provisions creating the trust for her son.

By paragraph 3, she transferred to the same trustee the balance of the property by it to be held in trust and managed for specified uses and purposes and upon terms and conditions in substance as follows: (a) She directed the trustee to pay the income to her while she lived. (b) She reserved the right by will to dispose of all the trust property. (c) She directed that if she made no disposi-

---

the death of decedent as consists of real estate or tangible personal property located within this State, or other item of property or interest therein lawfully subject to the imposition of an estate tax by the State of Alabama. . . ."

tion by will the trustee should pay $200 per month out of income to her husband during his life and the balance of income to her son and daughter during their lives; that the child or children of either, if dead, should receive the share of income which the parent would have received if living; that one-half of the property in the trust at the time of her death be transferred to the trust created for her son; and that the other half be transferred to the trust created for her daughter. (d) She reserved power at any time that she deemed income insufficient for her support to direct the trustee to sell a part of the trust property and to give her the amount received for it, and retained the right to direct transfer to her son or daughter of any portion of the trust property, and (e) the right to direct investments. She retained authority to remove the trustee and to appoint a successor. As to nearly all the property held in trust under paragraph 3, Mrs. Scales, her son, daughter, and the trustee, January 11, 1929, executed a writing releasing the power reserved to encroach on or dispose of corpus.

January 1, 1926, Mrs. Scales exerted the power by will to dispose of the trust property. Item two recites that she had reserved the right to dispose by will of property conveyed to the trustee under paragraph 3 of the trust agreement and provides: "Now, therefore, desiring to exercise the right to dispose of the said trust property, I do hereby give, devise, and bequeath all of the property in custody of said Title Guarantee Loan & Trust Company . . . at the time of my death to the said company, as trustee, the same to be held by it in trust upon the uses and trusts, terms, conditions, and limitations hereinafter set forth in this item of my will."

Section one of that item directs that from the trust estate there shall be set aside property of the value of $100,000 to be held in trust as there specified for her

daughter and her daughter's children. Section two makes like provision for her son and his children. Section three directs that, after the trust property shall be set aside as specified in sections one and two, the balance in the hands of the trustee shall be given in equal shares to her daughter and son to be theirs absolutely.

An amendment to the answer of the members of the Alabama Tax Commission alleges, and by stipulation the other parties admit, that from the trust indenture it fully appears that the title, possession and control of the securities passed completely to the Birmingham trust company and that such was the status of the securities at the time of the death of Mrs. Scales. That amendment also alleges, and the stipulation admits, that she never exercised the right reserved to her to remove the trustee and that the trust property could not have been removed from Alabama except upon an order of a circuit court and in compliance with the statutes of that State.[4]

The chancery court found that at the time of the death of Mrs. Scales the securities in question "had a legal situs analogous to the situs of tangible personal property in the State of Alabama." It decreed that Alabama may legally impose upon them a death transfer or succession tax and that in so far as the inheritance tax law of Tennessee attempts to impose the tax claimed by that State it violates the due process clause of the Fourteenth Amendment.

The state supreme court reversed the chancery court. It held that the securities were not so used in Alabama as to give them a situs there; that when Mrs. Scales died the situation was the same as though there never had been a trust; and that the property passed under the will as her absolute property. It entered a decree declaring the property taxable in Tennessee and not taxable in Alabama.

[4] Alabama Code, 1928, §§ 10418–10421.

The Tennessee commissioner and the members of the Alabama commission respectively claim the right to impose an inheritance or death succession tax based upon the value of all the property held in the trust at the time of the death of Mrs. Scales. Rightly the parties agreed and the state courts assumed that, consistently with the due process clause of the Fourteenth Amendment, both States may not impose transfer taxes in respect of the same property. *Frick* v. *Pennsylvania,* 268 U. S. 473, 489–494. *Farmers Loan Co.* v. *Minnesota,* 280 U. S. 204, 210–212. *Baldwin* v. *Missouri,* 281 U. S. 586, 591. *Beidler* v. *South Carolina Tax Comm'n,* 282 U. S. 1, 7–8. *First National Bank* v. *Maine,* 284 U. S. 312, 328. *City Bank Co.* v. *Schnader,* 293 U. S. 112, 116–117. See *Burnet* v. *Brooks,* 288 U. S. 378, 401–402; *Senior* v. *Braden,* 295 U. S. 422, 432; *Wheeling Steel Corp.* v. *Fox,* 298 U. S. 193, 209–210; *New York ex rel. Whitney* v. *Graves,* 299 U. S. 366, 372; *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308, 314–315; *Worcester County Co.* v. *Riley,* 302 U. S. 292, 297, 298. No distinction is suggested between the securities covered by the relinquishment, January 11, 1929, of the right reserved to encroach upon and to direct transfer from the corpus and the small part to which the relinquishment did not extend. And, as the parties and the state courts have treated all alike, this Court may decide upon title and taxability as if the relinquishment covered all.

The parties agree that, upon execution of the indenture, title, possession, and control passed completely to the trustee and so continued until the death of Mrs. Scales. There being no provision authorizing revocation, the grant was irrevocable. Perry on Trusts and Trustees (7th ed.) § 104. Bogert, Trusts and Trustees, § 993. *Keyes* v. *Carleton,* 141 Mass. 45, 49; 6 N. E. 524. *Ewing* v. *Jones,* 130 Ind. 247, 254–255; 29 N. E. 1057. *Bath Savings Institution* v. *Hathorn,* 88 Me. 122, 128–129; 33 A. 836.

*Wilson* v. *Anderson*, 186 Pa. 531, 537; 40 A. 1096. *Hellman* v. *McWilliams*, 70 Cal. 449, 453; 11 P. 659. *Strong* v. *Weir*, 47 S. C. 307, 323; 25 S. E. 157. Unquestionably it presently vested full legal and equitable title in the trustee and beneficiaries, subject to be divested only by the exertion by Mrs. Scales of her power of appointment by will. *Coolidge* v. *Long*, 282 U. S. 582, 597. *Marvin* v. *Smith*, 46 N. Y. 571, 575. *Carroll* v. *Smith*, 99 Md. 653, 658 *et seq.;* 59 A. 131. *Boone* v. *Davis*, 64 Miss. 133, 140; 8 So. 202. That power did not amount to an estate or interest in the trust property. *United States* v. *Field*, 255 U. S. 257, 263. *Porter* v. *Commissioner*, 288 U. S. 436, 441. All doubt as to that is precluded by the clause of the indenture which provides that in the absence of disposition by her will the property shall continue to be held in trust for purposes there specified.

The reserved authority to direct investment contemplates action as trustee and not control as owner. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, 346–347. The authority to remove the trustee and to appoint a successor detracts nothing from the plenary grant of title. See *Bowditch* v. *Banuelos*, 1 Gray 220, 230. When read as it must be in connection with the provisions of the Alabama statute above referred to, that provision of the indenture does not reserve power to remove the trust securities from the State of Alabama.

As the death of Mrs. Scales and taking effect of her will were coincident, the legal title remained in the trustee. The purposes Mrs. Scales intended to effect by the trusts defined by her will are like those she intended to serve by the trusts created by the indenture which, in absence of will, were to continue after death. Stripped of mere legalism, and taken according to substance, the will operated to amend and continue the trusts created by the indenture. Questions of power to tax are governed by the substance of things rather than by technical rules,

concerning title.  *Tyler* v. *United States,* 281 U. S. 497, 503.

It follows that, save her right to income, Mrs. Scales, after her relinquishment, January 11, 1929, and at the time of her death, had no estate or interest in the securities held by the trustee.  There is no basis for application of the fiction *mobilia sequuntur personam.*  *Wachovia Trust Co.* v. *Doughton,* 272 U. S. 567, 575.  *Brooke* v. *Norfolk,* 277 U. S. 27, 29.  *Safe Deposit & T. Co.* v. *Virginia,* 280 U. S. 83, 92, 94.  *McMurtry* v. *State,* 111 Conn. 594.  *Estate of Bowditch,* 189 Cal. 377.  *Matter of Canda,* 197 App. Div. 597; 189 N. Y. S. 917.  Cf. *Bullen* v. *Wisconsin,* 240 U. S. 625.  Tennessee may not impose the inheritance tax claimed in this suit by its Commissioner of Finance and Taxation.

Moreover, if contrary to the indenture as above construed, it should be held that at the time of her death Mrs. Scales in addition to having power of appointment by will owned an interest in the trust property, Tennessee would nevertheless be without power to impose a tax on the transfer of that interest because the intangibles in question had no situs in that State.

Intangibles, like tangibles, may be so held and used outside the State of the domicil of the owner as to become taxable in the State where kept.  See e. g. *New Orleans* v. *Stempel,* 175 U. S. 309.  *Bristol* v. *Washington County,* 177 U. S. 133, 143 *et seq.*  *State Board of Assessors* v. *Comptoir National,* 191 U. S. 388.  *Scottish Union & Nat. Ins. Co.* v. *Bowland,* 196 U. S. 611, 619–620.  *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395, 402.  *Liverpool & L. & G. Ins. Co.* v. *Orleans Assessors,* 221 U. S. 346, 353.  The general rule of *mobilia sequuntur personam* must yield to the established fact of legal ownership, actual presence and control in a State other than that of the domicil of the owner.  The phrase "business situs" as used to support jurisdiction of a State

other than that of the domicil of the owner to impose taxes on intangible personal property is a metaphorical expression of vague signification; its meaning is not limited to investment or actual use as an integral part of a business or activity, but may extend to the execution of trusts such as those created by the indenture and imposed on the trustee in this case. *DeGanay* v. *Lederer,* 250 U. S. 376, 381–382. *New York ex rel. Whitney* v. *Graves, supra,* 372 *et seq. Wheeling Steel Corp.* v. *Fox, supra,* 211. *First Bank Stock Corp.* v. *Minnesota,* 301 U. S. 234.

The stock certificates, bonds or other documents evidencing the intangibles constituting the trust property were never held in Tennessee. Neither their issue or validity nor the enforcement or transfer, inter vivos or from the dead to the living, of any right attested or supported by them was at all dependent on the laws of that State.[5] From the beginning, the trust estate has been under the protection of, and necessarily the trusts have been and are being executed under, the laws of Alabama unaffected by those of any other State. See *Hutchison* v. *Ross,* 262 N. Y. 381, 394; 187 N. E. 65; *Sewall* v. *Wilmer,* 132 Mass. 131, 137.

At least since 1917, Mrs. Scales had no power to remove the trust or any of the trust property from Alabama. Exertion of any right or power reserved to her by the indenture was dependent on the laws of Alabama and not upon or subject to those of Tennessee, where she happened to have her domicil. *Wachovia Trust Co.* v. *Doughton, ubi supra.* Subject to the laws of Alabama, all transactions in which the trust properties were capable of being used were identified with that State. The securities, held there not only for safekeeping but as well for collection of income and principal, and subject to sale and reinvestment of proceeds, could not be more com-

---

[5] See footnote 4.

pletely localized anywhere. *DeGanay* v. *Lederer, ubi supra.*

The judgment of the Supreme Court of Tennessee should be reversed and the case remanded to that court for further proceedings in accordance with this opinion.

Mr. Chief Justice Hughes, Mr. Justice McReynolds and Mr. Justice Roberts join in this opinion.