# PADDELL v. CITY OF NEW YORK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 42. Argued December 7, 1908.—Decided December 21, 1908.

Long settled habits of the community play an important part in determining questions of constitutional law and the fact that a method of taxation was in force for many years from a time antedating the adoption of the Fourteenth Amendment is a reason for not considering that it was overthrown thereby.

Notwithstanding the due process clause of the Fourteenth Amendment land subject to mortgage may be taxed for its full value without deduction of the mortgage debt from the valuation either of the land or of the owner's personal property.

In New York a tax on land operates *in rem*, at least without regard to the interests of different persons in the land.

A constitution cannot be carried out with mathematical nicety to logical extremes.

*Quære* and not decided, whether one disputing only the amount of a tax has any remedy except proceedings for an abatement.

187 New York, 552, affirmed.

THE facts are stated in the opinion.

*Mr. Everett V. Abbott* for plaintiff in error:

The general property tax, as customarily administered in this country, involves fictitious values, that is, of alleged values having no existence whatever. 1 Cooley Taxation, 1st ed., 159; 2d ed., 220; 3d ed., 387; Seligman, Taxation, 1st ed. (1895), 101; Wells, Theory and Practice of Taxation (1900), 474. Such taxation by fiction is unconstitutional. The fiction disappears, whenever a deduction is allowed, to the extent of the amount of the deduction; but when the deduction is not allowed the fiction is indubitably established. For that reason the plaintiff in error alleged that he was not assessed for any personal property.

A process whereby the State takes the property of its cit-

izens upon an official oath as to values which is false in·fact is not due process of law.

The question herein involved has never been directly decided by this court. The nearest approach to a decision that taxation by fiction is unconstitutional is to be found in cases that relate, not to fiction of fact, but to fiction of law, and in those cases this court has refused to allow the fiction to be employed. See *Union Transit Co.* v. *Kentucky,* 199 U. S. 194; *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395.

If the plaintiff in error is taxed upon more property than he owns, then he is taxed upon property which somebody else owns, and therefore he does not receive the equal protection of the laws. The right of the mortgagee is a legal interest in the land itself. *United States* v. *Title Ins. Co.,* 193 U. S. 651; *Savings Society* v. *Multnomah Co.,* 169 U. S. 421. The interest of the mortgagor is limited to that which remains over and above the legal interest of the mortgagee, the so-called equity. *Everson* v. *McMullen,* 113 N. Y. 293; *Weber Piano Co.* v. *Wells,* 180 N. Y. 62; *Union Trust Co.* v. *Coleman,* 126 N. Y. 433.

*Mr. David Rumsey,* with whom *Mr. Francis R. Pendleton* was on the brief, for defendant in error:

The New York system of taxation, restricting deduction of debts to personal property, is just; deducting bonded indebtedness from mortgaged realty would create, not prevent, inequality of taxation. No discrimination in the burden of taxation is shown as between persons similarly situated; and a system of taxation by which an equal burden is imposed upon all in the same class is not repugnant to the Constitution of the United States. *Merchants' Bank* v. *Pennsylvania,* 167 U. S. 464; *Michigan Central R. R. Co.* v. *Powers,* 201 U. S. 245; *Field* v. *Barber Asphalt Co.,* 194 U. S. 618; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 295; *Davidson* v. *New Orleans,* 96 U. S. 97, 104; *Hagar* v. *Reclamation District,* 111 U. S. 701; *Kentucky R. R. Cases,* 115 U. S. 321; *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill to prevent the City of New York from completing the levy of a tax and thereby creating a cloud upon the plaintiff's title. The plaintiff owns lots numbered 592, 594 and 596 on Seventh avenue, subject to mortgages for $70,000 and $45,000, given by him. The premises have been valued, as the first step toward taxation, at $160,000, and it is alleged upon information and belief that this valuation makes no deduction for the mortgages. The ground of the bill, so far as it is before us, is that the tax if completed will be contrary to the Fourteenth Amendment. Some criticism might be made and was made on the form of the allegations, but we will take them as presenting what we believe they were intended to present, the question whether, consistently with the Constitution of the United States, a man owning land subject to a mortgage can be taxed for the full value of the land, while at the same time the mortgage debt is not deducted from his personal estate. A demurrer to the bill was sustained by the courts below.

The plaintiff has many difficulties in his way. In the first place the mode of taxation is of long standing, and upon questions of constitutional law the long settled habits of the community play a part as well as grammar and logic. If we should assume that, economically speaking, the present system really taxes two persons for the same thing, the fact that the system has been in force for a very long time is of itself a strong reason against the belief that it has been overthrown by the Fourteenth Amendment, and for leaving any improvement that may be desired to the legislature.

The weight of the plaintiff's argument is that he is taxed for what he does not own. The bill seems to have been drawn on the dominant notion of a right attached specifically to the mortgaged property, that is to say, the notion that the property represents so many units of value, from which the mortgage subtracts so many, leaving only the remainder subject to be taxed; and this is the plaintiff's view. But there is a subordi-

nate averment that the plaintiff has not been assessed for taxes in respect of personal property, and the allegation seems to convey, by indirection, that no deduction of the mortgage debt has been made from personal property, and to admit that such a deduction would have set the city right. As to the former notion, it will be observed that the mortgages were given by the plaintiff, and therefore charged him, as well as his land. If he should die, by the law of New York his personal property would have to exonerate the realty, so far as it would go. If he lives, and remains solvent, the chances are that he will pay the mortgages out of personalty. Therefore, the true deduction is not the amount of the mortgages, but the speculative chance that the land may have to be sold for the debt— a chance that would be insured at different rates to different persons. The other theory regards the mortgage debt as a deduction from total riches, to be compensated by an allowance to them indifferently, either in the valuation of the land or by a deduction from personal estate. And this logically leads to the conclusion that no scheme of taxation is constitutional that does not make allowance for all obligations and debts; a conclusion that the plaintiff seems to accept, while he does not make it plain that he does not receive both in law and in fact such an allowance by a deduction of debts from personal estate.

It cannot matter to the plaintiff's argument whether the obligation is directed to a specific object or to the whole mass of objects owned by the party bound. In the one case, as much as in the other, the obligation will take certain units of value from his riches, when under the compulsion of the law it is performed. But it is an amazing proposition of constitutional law that the law cannot fix its eye on tangibles alone and tax them by present ownership without regard to obligations that, when performed, would make some of them change hands; for instance, that under the Fourteenth Amendment a man having a thousand sheep as his only property could not be taxed for their full value without allowance for an unsecured debt of five thousand dollars, even if his creditors should be left untaxed.

a matter that hardly would concern him. Bell's Gap R. R. Co.
v. Pennsylvania, 134 U. S. 232, 237; Merchants' & Manufacturers' Nat. Bank v. Pennsylvania, 167 U. S. 461, 464; People
v. Barker, 155 N. Y. 330, 333. Undoubtedly he would be
taxed for more than he owned if his total riches were computed
on the footing that the law would keep its promise and make
him pay, and that what would be done should be treated as
done. If he owned other property, still there would be the
chance that the sheep might be seized on execution, and, as we
have said, the liability of the mortgaged land is no more, although the chance may be greater. It is a sufficient answer
to say that you cannot carry a constitution out with mathematical nicety to logical extremes. If you could, we never
should have heard of the police power. And this is still more
true of taxation, which in most communities is a long way off
from a logical and coherent theory. And it may perhaps be
doubted whether there is even a logical objection to the sovereign power giving notice to all persons who may acquire
property within its domain that when it comes to tax it will not
look beyond the tangible thing, and that those who buy it must
buy it subject to that risk.

The plaintiff's contention that the mortgage must be deducted from the land, whether the mortgage is taxed or not,
stated a little differently, is that he was entitled to an apportionment of the tax to his interest, and that if the title to a lot is
split up the government cannot tax it as a whole. To this we
cannot agree, although it should be mentioned that the Greater
New York Charter permits the owner of any interest to redeem
it separately. Sec. 920. We have assumed so far that the
tax on this real estate is a debt that might be collected by a
personal suit against the plaintiff. As a matter of fact it is not
collected in that way and we gather from what was said and
admitted at the argument that it is doubtful at least whether
such an action would lie. See Durant v. Albany County, 26
Wend. 66; City of Rochester v. Gleichauf, 82 N. Y. Supp. 750
Suppose that the tax law should operate only in rem, against

a lot defined by the limits of a separate title, and should simply give notice by sufficient means to all the world that it would be sold unless within a certain time some party in interest should see fit to pay a certain sum. Notwithstanding the position of the plaintiff, it cannot be doubted that such a proceeding would be as valid as the imposition of a personal liability upon individuals according to their interest. See *Witherspoon* v. *Duncan*, 4 Wall. 210, 217; *Castillo* v. *McConnico*, 168 U. S. 674, 681, 682. But the notion of a proceeding *in rem* is at the bottom of the usual tax on land, even where, as in Massachusetts, there is a personal liability superadded. This is shown by the doctrine that a valid tax sale cuts off all titles and starts a new one. *Hefner* v. *Northwestern Life Ins. Co.*, 123 U. S. 747, 751; *Emery* v. *Boston Terminal Co.*, 178 Massachusetts, 172, 184. Of course there is no question of allowances or deductions upon a proceeding *in rem*. All interests are proceeded against at once.

If there is no personal liability in New York the levy of a tax is a proceeding *in rem*, whatever requirements may be made for notice by naming parties in interest, and even if naming them is a condition to the validity of the tax. Indeed, it may be assumed that primarily it is such a proceeding in any event, and as a proceeding *in rem* might be sustained, even if the personal liability failed. A tax on special interests is not unknown, *Baltimore Shipbuilding & Dry Dock Co.* v. *Baltimore*, 195 U. S. 375, 381, but the usual course is to tax the land as a whole, and that we understand to be the way in New York. "In all cases the assessment shall be deemed as against the real property itself, and the property itself shall be holden and liable to sale for any tax levied upon it." Laws of 1902, c. 171, § 1. See Greater New York Charter of 1901, §§ 1017, 1027.

More might be said, but we will add only that while in order to meet the plaintiff's arguments we have taken his bill as presenting the question that we believe it was intended to present, the assumption hardly could be made if our opinion otherwise was on his side. It does not appear that he has not received

an allowance for his mortgage debt except by a conjectural inference. Among the matters that we do not consider is whether the plaintiff has any remedy except proceedings for an abatement, when he admits that he was liable to a tax and disputes only the amount.

*Judgment affirmed.*