**THE BOARD OF PUBLIC INSTRUCTION OF DADE COUNTY, FLORIDA,** a public corporation, et al., v. **STATE OF FLORIDA,** ex rel. Eugene B. Hunter.

7 So. (2nd) 105                        Special Division A
March 27, 1942

214

John J. Lindsey, for plaintiffs in error.

Thomas C. Mayes, Roscoe Brunstetter, Hollis Rinehart, Jr., and Edward L. Sample, for defendant in error.

THOMAS, J.:

A peremptory writ of mandamus notwithstanding the answer was issued by the circuit judge commanding the respondents, now plaintiffs in error, "to divide Dade County, Florida into five County School Board Election Districts, placing each election precinct wholly within one or another of the County School Board Election Districts and placing in each District,

as nearly as practicable, the same number of qualified electors."

It appears from the writ that pursuant to the requirements of Section 2, Chapter 17747, Laws of Florida, Acts of 1937, the then board of public instruction designated "five school board districts" which the relator charges was done in disregard of the mandate in that law that each area should contain "as nearly as practicable the same number of qualified voters," with the result that the numbers of voters in the respective districts varied from approximately twenty-five hundred to twenty-five thousand. It was further set out that in 1939 a comprehensive law was passed known as "The Florida School Code" (Chapter 19355, Laws of Florida, Acts of 1939), which contained the same provisions, Section 406 (1), for the division of counties of the population of Dade into "County Board Election Districts" to the end that each would contain as nearly as practicable the same number of qualified electors and that at the time the latter became effective the number of qualified electors in the districts theretofore established ranged from approximately thirty-seven hundred to forty-two thousand. It is charged that the board has failed also to abide by the latter act.

In the defensive pleading the respondents denied that the original act was ignored when the districts were established and, by way of explanation, pointed out that because of geographic, industrial and commercial conditions it was to the best interests of the public schools to form districts as they now exist, with the result that there was considerable difference in the number of qualified electors in the various districts. Admirable as may have been the motive

of the board of public instruction in using as a guide. the welfare of the county public school system, it cannot be gainsaid that the express legislative provisions contemplated and commanded the establishment of the districts on a basis of numbers of qualified electors and contained no reference to any of the other elements which, according to its answer, influenced the board. We find in the act no authority to take into account the character of the different territories that existed in the county. Patently, it was the purpose of the legislature to provide as nearly as possible equal representation on the board of public instruction based entirely upon population of qualified electors. It is plain from the unequivocal language of the act that it was the duty of the board of public instruction to fix the boundaries of the various districts solely on that basis, with only the qualifications that no impractical plan should be followed and that no voting precinct should be contained partly in one district and partly in another. These exceptions did not give them the authority to indulge the considerations by which, according to their answer, they were governed.

As we understand the position of the plaintiffs in error they claim that despite the requirements for original fixation of districts and the method they followed in establishing them it is now Section 407 of Chapter 19355 which governs and that it gives the board discretionary authority to make changes in boundaries. In other words, although both Chapters 17747 and 19355 contain provisions that counties of a certain population *shall* be divided into districts of a certain kind, Section 407 provides that "the . . . Board . . . may make any changes in the boundaries

. . . which they deem necessary to meet the requirements prescribed herein . . . ." To agree with them would be to hold that if an improper designation of districts was made under the first act, thereafter the board could not be forced to follow the general scheme of fixing boundaries with reference to numbers of qualified voters because in Section 407 the verb "may" is used, while in Section 406 the language makes the action on their part mandatory. We do not think that this is a conclusion that may be logically reached. It is clear from a comparison of both acts that the board can comply only in a certain way which we have given and having failed properly to define the boundaries of the districts they cannot avoid the writ simply because of the phraseology used authorizing adjustments in a certain fashion to preserve the general plan.

It is our view that there was no impropriety in the ruling of the circuit judge on the merits. It is well to compare the number of electors in the smallest district and those in the petitioner's district at the time the board of public instruction acted and at the time the petition was filed. At the first period petitioner resided in the district containing ten thousand voters and in the smallest district there were about twenty-four hundred, while at the later date there were thirty thousand qualified electors in his district and in the smallest one about thirty-seven hundred. Even allowing for a discrepancy because of the necessity of avoiding boundary lines which would place a part of a voting precinct in one district and the remainder in another, it seems to us that the disparity between the smallest and the largest, or

between the smallest and the one in which the petitioner lived, shows upon its face that the Act was not obeyed. It is but a matter of arithmetic that a person residing in a district where there were thirty thousand electors would have but one-tenth the representation on the board of a person residing in a district where there were three thousand. Equality of representation was the right of the relator and all who lived in his district and he was entitled to a judgment that would secure it to him and others in like situation.

There is but one other question which we must answer, namely, whether the petitioner, described as a citizen, resident and qualified elector, had the right to bring the action which, as had been seen, was one to enforce the performance of an alleged statutory duty of the board of public instruction, it being the contention of the plaintiffs that he has no peculiar interest which has been affected justifying suit by him to enforce an adjustment of the boundaries of the five areas. Certainly his right to representation, and that of others similarly situated, on the board of public instruction is materially curtailed by the present plan, which has resulted from a failure on the part of the planitiffs in error fully to abide by the mandatory provisions of the statute. Thus, his right is common with others in the same district and the infringement is directly chargeable to the non-performance of a duty of public officials.

It is said in High's Extraordinary Legal Remedies (Third Edition, 1896), page 421, that according to the weight of authority relator must show some interest peculiar to him if the protection sought is one of private rights, but that in the case where a public right is affected and "the object of the mandamus

is to procure the enforcement of a public duty . . . relator . . . need not show that he has any . . . interest in the result . . . ." In support of this pronouncement there is cited the case of State ex rel. Scott v. Board Co. Coms., 17 Fla. 707, and F. C. & P. R. R. Co. v. State ex rel. Tavares, 31 Fla. 482, 13 So. 103, 20 L.R.A. 419, in both of which this Court seems to have recognized and adopted the rule which we have quoted.

The principle was announced again in a later decision of this Court, State v. Atlantic Coast Line R. Co., 95 Fla. 14, 116 So. 48, where it was also held that where a public right was primarily involved it was appropriate but not necessary that the case be instituted by the attorney general or with his consent, or that his failure to institute the suit should appear. See also 35 Am. Jur., Mandamus, Section 320; Crandall, Fla. Com. Law Practice (Blank ed. 1928), page 642.

From our study of the matter we are convinced that the relator had the right to bring suit and he may not be defeated in the exercise of it by the failure to state in the writ that he was doing so for the benefit of all others in like situation. This is quite evident.

Affirmed.

BROWN, C. J., BUFORD and ADAMS, JJ., concur.