JOHN PRINCE, A. A. POSTON, LAKE LYTAL, C. Y. BYRD, and PAUL RARDIN, as composing and constituting the BOARD OF COUNTY COMMISSIONERS OF PALM BEACH COUNTY, FLORIDA, v. STATE OF FLORIDA, ex rel. T. HAROLD WILLIAMS.

25 So. (2nd) 5                                    January Term, 1946
February 22, 1946                                       En Banc
Rehearing denied March 7, 1946

*Harry A. Johnston* and *Henry F. Lilienthal,* for appellant.
*Wareing T. Miller* and *Guyte P. McCord, Jr.,* for appellee.
*G. B. Knowles,* as amicus curiae.

BUFORD, J.:

An amendment to the constitution having been duly submitted by the Legislature to the electorate of Florida at the general election in November, 1944, such amendment was adopted amending Section 5, Article VIII of the constitution to read as follows:

"Section 5. There shall be one County Commissioner in each of the five County Commissioners districts in each county, which districts shall be numbered one to five inclusive, and shall be as nearly as possible equal in proportion to population. The Board of County Commissioners in the respective counties shall from time to time fix the boundaries of such districts. Said County Commissioners shall be elected by the qualified electors of said county at the time and place of voting for other county officers, and shall hold office for four years, Provided, that the County Commissioners elected from the even number districts in 1944 shall serve for two years, those elected in 1944 from the odd numbered districts shall serve for four years, and thereafter the terms shall be for four years; Provided, that Section 11 of Article VIII of this Constitution shall not be affected hereby."

The County Commissioners of Palm Beach County having failed to comply with the provisions of the constitution, supra, the Relator, T. Harold Williams, filed his petition in the Circuit Court of Palm Beach County praying an alternative writ of mandamus to coerce the County Commissioners of that county. The prayers of the petition were as follows:

"(1) That this Court will take jurisdiction of the parties and the subject matter hereto.

"(2) That this Honorable Court do issue an alternative writ of mandamus, commanding John Prince, A. A. Poston, Lake Lytle, C. Y. Bryd and Paul Rardin as, composing and constituting the Board of County Commissioners of Palm Beach County, Florida, within a time set by this Court, to fix the boundaries of the County Commissioners' District in Palm Beach County, Florida, so that each thereof is as nearly as possible equal in proportion to population, in compliance with the terms and conditions contained and set forth in the above quoted amendment to the Florida Constitution; or to show cause to this Court for their refusal so to do.

"(3) That your Petitioner may have such other and further relief as he may be entitled to receive in the premises.

"(4) That if the Alternative Writ of Mandamus herein prayed for is granted and is issued, that this Petition for Writ of Mandamus may be incorporated into and made a part of

said Alternative Writ of Mandamus, by reference, as fully as if set forth in haec verba."

The Alternative Writ issued and, on motion, was quashed. Thereafter an amended alternative writ was issued on the 15th day of December, 1945, the command whereof was as follows:

"NOW, THEREFORE, We being willing that full and speedy justice be done in the premises, do command you, JOHN PRINCE, A. A. POSTON, LAKE LYTLE, C. Y. BYRD and PAUL RARDIN as, composing and constituting the Board of County Commissioners of Palm Beach County, Florida, to forthwith fix the boundaries of the County Commissioners' Districts of Palm Beach County, Florida, so that each thereof is as nearly as possible equal in proportion to population, in compliance with the terms and conditions set forth and contained in the above quoted amendment to the Florida Constitution; or in default thereof that you appear before this Court on the 21st day of December, A. D. 1945, at 2:00 o'clock P. M. in Chambers at West Palm Beach, Florida, and then and there show cause why you refuse so to do."

Motion was filed to quash the amended writ and demurrer to amended alternative writ of mandamus was interposed. The motion to quash and the demurrer was over-ruled with leave to the respondents to file return or answer on or before December 28th 1945.

Respondents filed answer on December 28th 1945, as required, and made a part of such answer a resolution adopted December 28th 1945, wherein and whereby the Board of County Commissioners purported to re-district Palm Beach County into five (5) Commissioners' districts, describing each of said districts.

Relator, on December 31st 1945, filed motion for peremptory writ of mandamus, notwithstanding the return, wherein, inter alia, it is alleged:

"That the answer does not show that John Prince, A. A. Poston, Lake Lytle, C. Y. Byrd and Paul Rardin, as, composing and constituting the Board of County Commissioners of Palm Beach County, Florida, have fixed the boundaries of the County Commissioner's Districts of Palm Beach County,

Florida, so that each thereof is as nearly as possible equal in proportion to population, for the reason that as closely as may be computed from the last State Census figures, the County Commissioner's Districts prior to December 28th 1945, were populated approximately as follows:

DISTRICT NO. 1 ............... 4,442
DISTRICT NO. 2 ...............48,173
DISTRICT NO. 3 ...............16,621
DISTRICT NO. 4 ............... 8,613
DISTRICT NO. 5 ...............34,245

"That after December 28th 1945, the County Commissioner's Districts, according to the last State census figures, are populated approximately as follows:

DISTRICT NO. 1 ............... 9,989
DISTRICT NO. 2 ...............40,465
DISTRICT NO. 3 ...............15,488
DISTRICT NO. 4 ...............12,042
DISTRICT NO. 5 ...............34,327

"That by a reasonable compliance with the Constitutional Amendment, it is possible and practicable, and the intent of the people that the districts can and should be fixed so that they are as nearly as possible in proportion to population.

"That wherever the word 're-districting' is used in the Answer of the Respondents, it is not in compliance with or in answer to, the command section of the Amended Alternative Writ of Mandamus, wherein it directs that the boundaries of the County Commissioner's Districts of Palm Beach County, Florida, be fixed so that each thereof is as nearly as possible equal in proportion to population.

"That Paragraph VII of the Answer of Respondents, wherein it states that the resolution adopting a re-districting plan and referred to as Exhibit 'A' of the Respondents, is as nearly as may be done and as nearly as may be practicable, is not substantiated by any figures covering population totals; that your Relator is at a total loss and entirely unable to determine from the Answer or the exhibits thereto attached, what the population of the newly created districts is; that the

sole and only measuring stick of the above referred to Constitutional Amendment is based on population, and there being a failure to include the population statistics in the Answer, that it amounts to no answer at all."

At the hearing on the motion for peremptory writ, Relator introduced in evidence a certified copy of the State census record of 1945 pertaining to Palm Beach County as it appears in the office of the Commissioner of Agriculture of the State of Florida, which certified copy of the said record showed the population of each of the voting precincts of Palm Beach County.

Thereupon, on January 5th 1946, the Court entered its Order wherein it is said:

"Upon overruling the motion to quash the alternative writ, the respondents filed an answer purporting to show performance, in that the County on December 28, 1945, had been re-districted on a basis which in the opinion of the County Commissioners was 'as nearly as may be practicable in accordance with the Constitution and laws of the State of Florida.' The answer contains no facts to support the opinion.

"For about 20 years—as counsel indicated at one of the hearings—the five commissioner's districts had remained practically unchanged. The population of these commissioner's districts, according to the figures in the amended alternative writ of mandamus, varied as follows: 4,442; 48,173; 16,621; 8,613; 34,245. The population basis for the districts as revised by the County Commissioners on December 28, 1945, according to the official census figures admitted in evidence, shows districts with populations that vary approximately as follows: 9,989; 40,465; 15,488; 12,042; 34,327. There are discrepancies in the figures of some of the election districts contained in the Answer and the official figures, but these are not material for the purposes of this order. The relator now asserts that there has been no performance of the constitutional duty, and that the peremptory writ of mandamus should issue.

"The mandate of the Constitution is clear and specific. It states that the Districts 'shall be as nearly as possible equal

in proportion to population.' The only possibility which prevents an absolute equality would be the possibility of a variation in the population of borderline election districts of the various Commissioner's districts.

"If each County Commissioner's District had in it an equal population, then each would have a population of approximately 22,462. Of course, this is impossible, for the County Commissioner's districts must be comprised of complete election districts. The County Commissioner's districts must follow boundary lines of election districts. A careful analysis of the population figures of the various election districts indicates that it would be a simple matter to outline five separate Commissioner's districts, with complete and contiguous election districts in each County Commissioner's district, and with a population in each County Commissioner's district which would not vary more than approximately 15% from the desired figure of 22,462. But, in order to do this, one must have in mind as the controlling guide the mandate of the Constitution, which requires that the districts 'shall be as nearly as possible equal in proportion to population.'

"In a somewhat similar case involving a law pertaining to school districts in Dade County, the Supreme Court of Florida in March, 1942, in the case of Board of Public instruction v. State, 150 Fla. 213, 7 So. (2nd) 105, held that it was the duty of the School Board to fix boundaries of School districts solely on the basis that each should contain 'as nearly as practicable the same number of qualified voters.' The Board aserted that because of geographic, industrial and commercial conditions, it was to the best interest of public schools to form districts as they then existed, which had one district almost ten times as large as another. However, the Court held that the Board had no discretion in the matter except to follow the law, which entitled the Relator, who was a citizen, resident and qualified elector, to an equality of representation. While the facts in the Dade County case differ in degree from those in this case, the principles of law enunciated therein clearly apply. The County Commission has no discretion except to follow the Constitution—neither has the Court. The Court has no discretion in determining which election districts

should comprise a particular County Commissioner's District. The duty of the Court is similar to that of the County Commissioners, which is merely to abide by the constitutional mandate. So it is understandable why the Answer fails to set forth any facts even purporting to show that it is impracticable or impossible to re-district as required by the Constitution. A variation of approximately 300% in population of Commissioner's districts does not show performance of the constitutional duty required by the Alternative Writ of Mandamus. It follows that the peremptory writ of mandamus should issue, notwithstanding the Answer of the Respondents, for no defense is presented,"—and granted the peremptory writ.

Respondents appealed.

Section 5 of Article VIII as amended at the general election in 1900 and as it continued until the 1944 amendment, supra, was as follows:

"Section 5. Immediately upon the ratification of this Amendment the county commissioners of the several counties of this state shall divide their respective counties into five commissioners' districts, to be numbered respectively from one to five, inclusive, and each district shall be as nearly as possible equal in proportion to population, and thereafter there shall be in each of such districts a county commissioner, who shall be elected by the qualified electors of said county, at the time and place of voting for other county officers, and shall hold his office for two years. The powers, duties and compensation of such county commissioners shall be prescribed by law; Provided that nothing herein shall affect the terms of commissioners holding office at the time of such division; Provided, further, that all vacancies occurring by limitations of terms, or from death, resignation or otherwise, before the election of 1902, shall be filled by appointment by the Governor, as now provided by law."

Certain statutes enacted prior to 1941 were brought forward and reenacted in Florida Statutes, 1941, as chapter 124. We are not called upon at this time to construe those statutes as they applied to and were controlled by the Constitution prior to 1944. Our conclusion is, however, that Sec.

124.01 is not in harmony with Sec. 5, Article VIII, as it now exists. Therefore, the provisions of the Constitution will control, rather than those of the statute.

We also conclude that provisions of Sec. 124.04 are not applicable to the case made in the pleadings before us. It was the purpose of that section that it should apply to changes in one or more districts which were sought to be made after the county commissioners had under the provisions of the Constitution as it then existed divided the county into five county commissioners' districts. It has been the purpose of the Constitution ever since the adoption of the amendment of 1900 that the county commissioners' districts in each county commissioners' districts in each county of the State should be as nearly as possible equal in proportion to population. To so divide the county into county commissioners' districts was, and is, a continuing duty resting upon the Board of County Commissioners and neither legislative act nor any delay relieved the Board of County Commissioners from performing that duty.

The record here shows that at no time had the County Commissioners of Palm Beach County complied with the command of the Constitution requiring them to divide the county in such manner as to make the several districts "as nearly as possible equal in proportion to the population." It may be admitted that the word "possible" as used in the Constitution is synonymous with the word "practicable" but if we read the section using the word "practicable" in lieu of the word "possible" we arrive at the same conclusion which we have indicated above, because in either event the duty is to divide the county into five commissioners' districts making them as nearly equal as possible or practicable in proportion to population and this gives the Board of County Commissioners no discretion which will permit the creation of districts ranging in population from 10,000 to 40,000 as was attempted in the instant case. That mandamus will lie to coerce the performance of a duty of this sort is settled in this jurisdiction. See Board of Public Instruction of Dade County, Fla., v. State ex rel Hunter, 150 Fla. 213, 7 So. (2nd) 105 and cases there cited.

It is contended in this case that the County Commissioners may exercise wide discretion when dividing a county into County Commissioners' Districts. It is true that such Boards may exercise a reasonable discretion but that discretion must be exercised within the terms of the Constitution and the Board cannot disregard the mandate of the Constitution requiring that such districts must be created with a view to equality in population. This does not mean that the Board is bound to so create the districts that each will have an identical population. But it does mean that the population of each district shall be equal to that of the others as near as it is practicable to attain that end. A division of the county into County Commissioners' districts otherwise will not constitute a compliance with the organic law, supra. See Merrill v. Mitchell, et al., County Commissioners, 257 Mass. 184, 153 N.E. 562; Donovan v. Suffolk County Apportionment Commissioners etc., 225 Mass. 55, 113 N.E. 740; People et rel Baird et al. v. Board of Supervisors of Kings County, 138 N.Y. 95, 33 N. E. 827.

Of course, what is said here is said in recognition of the fact that a failure of the County Commissioners to establish County Commissioners' districts in the county in accordance with the provisions of the Constitution will in no way vitiate the action of the Board of County Commissioners who have been or may be elected from districts otherwise created. We merely hold that until the Board of County Commissioners has divided the county into County Commissioners' districts in the manner directed by the Constitution that duty continues to rest upon the Board of County Commissioners and that Board may be coerced by mandamus to perform the duty in the manner directed by the Constitution.

A majority of the Court are of the opinion that the provision of the finding of the Circuit Court, as follows:

"The mandate of the Constitution is clear and specific. It states that the districts 'shall be as nearly as possible equal in proportion to population.' The only possibility which prevents an absolute equality would be the possibility of a variation in the population of borderline election districts of the various Commissioners' districts.

"If each County Commissioners' district had in it an equal population, then each would have a population of approximately 22,462. Of course, this is impossible, for the County Commissioners' districts must be comprised of complete election districts. The County Commissioners' districts must follow boundary lines of election districts. A careful analysis of the population figures of the various election districts indicates that it would be a simple matter to outline five separate Commissioners' districts, with complete and contiguous election districts in each County Commissioners' district and with a population in each County Commissioners' district which would not vary more than approximately 15% from the desired figure of 22,462. But, in order to do this, one must have in mind as the controlling guide the mandate of the Constitution, which requires that the districts 'shall be as nearly as possible equal in proportion to population.' "—should be eliminated because there is no valid requirement that the County Commissioners' districts shall be so created so as to conform to the election districts.

It is the view that the County Commissioners' districts may be created so as to be as nearly as possible equal in proportion to population and then the election districts may be changed to conform to the County Commissioners' districts.

For the reasons stated, the judgment appealed from shall be reformed as above suggested and, so modified, it is affirmed.

If appellees wish to file petition for rehearing, the same shall be filed herein within ten (10) days from the filing of this opinion.

So ordered.

CHAPMAN, C. J., TERRELL, BROWN, THOMAS, ADAMS and SEBRING, JJ., concur.