DREW, Justice.
On November 3, 1952, an alternative writ of mandamus was issued by the lower court commanding the County Commissioners of Lake County “to forthwith divide said Lake County, Florida, into five County Commissioners’ Districts, which districts shall be numbered 1 to 5, inclusive, and which shall be as nearly as possible equal in proportion to population” or show cause why they should not do so. On December 8, 1952 the County Commissioners filed their return to said writ in which they represented to the court that they had “heretofore failed to perform their duty as County Commissioners of Lake County, Florida”, as required by Section 5 of Article VIII of the Florida Constitution, F.S. A., in that they had not recently divided said county into five districts of nearly as possible equal population. But they further represented to the court that at their regular meeting on December 2, 1952, pursuant to the command of- the alternative writ they had considered the matter and had adopted a resolution whereby the county was “divided into five Commissioners’ Dis *796 tricts of as nearly equal as possible population.” A copy of the resolution was attached to and made a part of the return.
The relator, a voter, citizen and freeholder, moved for a peremptory writ notwithstanding the 'return, alleging, among other things, that the population .of the new County Commissioners’ Districts unreasonably varied from 10,700 in district one to 4,720 in district five. A hearing was had before the lower court and extensive evidence taken. On the basis of the evidence and pleadings before it the ■ lower court quashed the return of the County Commissioners. Pertinent portions of that order are f ■ ■
“1. The Court finds from the return of the respondents that the purported redistricting of County Commissioner Districts as required by the alternative writ heretofore issued, was accomplished by transferring certain areas of various Commissioners’ Districts to other districts. The evidence of the Commissioners who testified before this Court on hearing of relator’s motion, shows without doubt that the population figures assigned by the Board to each of the several districts which they made in their purported effort to redistrict the county, was pure guess work.
"2. In such redistricting, counsel for the County Commissioners admitted that in several instances, election district or precinct lines had been ignored. This Court holds that Section 124.04, Fla. Statutes, should be complied with unless necessity is shown for disregarding precinct lines. In other words, both the statutory requirement that district lines must follow precinct lines, and the constitutional requirement that the districts shall be of equal population as nearly as possible, shall be observed and obeyed, unless reasonable necessity to upset an election precinct is shown.
“3. This Court is now confronted with the proposition that while the remedy of mandamus seeks to require the respondents to in good faith redistrict the county as required by the constitution, the respondents of course have a discretion, but not an unlimited discretion, as to what variation may be allowed between the population of the various County Commissioner Districts.. This Court has no desire or authority to substitute its discretion for that of the respondents. However, if the further response of the respondents in this cause should not show a reasonable exercise of discretion in good faith, the Court certainly has authority to go further and exercise other power than simply directing another attempt on the part of the respondents.
“4. This Court is of the opinion that' the 1945 State Census is the only proper basis for this •reapportionment available. Unquestionably, it was not 100 per cent accurate. Perhaps, there has never been a perfect census made. However, it was the duty of the County Commissioners of Lake County to reapportion the County Commissioners’ Districts according .to that census, which was not done and that duty has continued, and still continues to this day. What everyone knows the Court is supposed to know, and does know, that all parts of Lake County have grown and are continuing to grow more rapidly during the last few years than ■formerly. No one part of the county has grown at a rate greatly in excess of any other part. As shown by relator’s motion for peremptory writ, the precincts of the county can be grouped into units varying from 5489 to 5652. Perhaps no more perfect division of population could be. expected, since the theoretical, ideal, according to the 1945 census, is 5589 for each district.
“5. There is no justification for wide differences in population of districts in this county, such as was made •in Volusia County. That was justified ■ on the basis that West Volusia County with 19,000 population was largely agricultural whereas the four East-Volusia County precincts (12,000-14,000) were largely tourists and the irregularity of islands and coast line undoubtedly had *797 to be taken into consideration. No such marked differences exist in Lake County. Agriculture, notably citrus, is paramount in all sections. There is some cattle raising, but it is scattered from one end of the county to the other, and from side to side. The tourist trade is important and growing in all sections, but no section is outstanding over any other section in this regard. Every section has its railroads, through ’ highways, canneries, groves, farms, tourist and fishermen’s ' accommodations. The business interests of the county are strikingly uniform.
“6. This Court is not of the opinion that the districts should necessarily be so closely parallel in population as that suggested by the relator in his motion for peremptory writ. Undoubtedly utility and accessibility of the County Commissioner to all parts of his district should be given some consideration, since the office of County Commissioner is of considerable importance to the inhabitants of his district, and the County Commissioner is supposed to be of some service to those people.
“7. After a careful study of population figures according to the 1945 census, I am of the opinion that an equitable and fair rearrangement of districts can be readily arranged between an upper allowance of 7000 people for the largest district, and a minimum allowance of 4000 for the smallest district, based on the 1945 State census. Within these limits, proper and reasonable discretion in good faith can be exercised by the respondents.
******
“It is thereupon
“Ordered and Adjudged that the return of the respondents be, and the same is hereby quashed and the respondents are given to January 15, 1953 in which to make a new return to the alternative writ heretofore issued.”
Respondents County Commissioners elected to stand on their return, whereupon, on January 27, 1953, a peremptory writ of mandamus was issued, the coercive portion of which is:
“Now Therefore, you, George L. Singletary, J. C. Cowart, H. K. Stokes, O. M. Simpson, H. Lightfoot, .as and constituting the Board of County Commissioners of Lake County, Florida, are hereby commanded to forthwith assemble and res.cind your action of December 2, 1952, .fixing boundaries of County Commissioners’ Districts, of Lake County, and to forthwith divide Lake County into five Commissioners’ Districts, which districts shall, be numbered 1 to 5, inclusive, and each of which shall be as nearly as possible equal to the proportion of population, in a manner not inconsistent with this Court’s Order of December 20, 1952.”
From the latter judgment this appeal is prosecuted.
We have carefully examined the evidence adduced before the lower court, and we find there ample support for the conclusion reached by the lower court that the resolution of the County Commissioners redistricting the county was based on “pure guess work.” The substance of the evidence of the County Commissioners was that a few days before the meeting, of December 2nd they rode over the district in ■their car, counted the houses in certain affected areas and, by calculating that four people lived in each house, estimated the population. The censús figures of the State Census of 1945 (where.population is broken down to election precincts), as well as the figures of the Federal Census of 1950 (where population is broken down to County' Commissioners’ Districts), were completely ignored in the redistricting. In the examination of County Commissioner Singletary, he testified that he arrived at an original figure of 1500 in Precinct Nine by estimating it, and that such estimate was based on his knowledge of the area. He said he did not use the censús figures at all because “I do not think the census was áccurate to start with. Never did think it was accurate, out there.” The testimony of the other Commissioners was equally un *798 satisfactory and afforded an ample foundation for the conclusion that the redistricting was purely “guess work.”
The mandate of the Florida Constitution, Section 5, Article VIII, that the five County 'Commissioners’ Districts “shall be as nearly as possible equal in proportion to population” is clear and unequivocal. It is a part of the fundamental law of this State and it is the plain duty of public officials to see to it that the mandate is obeyed. They do not have the official right to question the wisdom of a provision of the Constitution they swear to support, protect and defend as a condition precedent to their right to hold office. Nor do they have the right to give lip service only to such mandate.
When, as here, it is brought to their attention that a provision of the Constitution has not been complied with by them — and where, as here, they admit such fact — a solemn duty rests on them promptly, honestly, thoroughly, and conscientiously to comply fully with the spirit and letter of the organic law. In Ryan v. State ex rel. Ford, Fla. 1952, 60 So.2d 188, 190, we held that the dominant purpose of the constitutional provision under discussion is “equality of representation as near as can be attained within a reasonable range of discretion.” Equality of representation is the veiy keystone of representative government, and the discretion which may be exercised by officials charged with the duty of so arranging their political subdivisions to accomplish that end is circumscribed by that greater requirement. Unless equality “as nearly as possible” as required by the Constitution is attained, the discretion has been abused. And — if the result reached is based on secondary evidence when primary evidence is available — the duty has not been discharged as the Constitution con-, templates. The discretion vested in the County .Commissioners in the performance of this duty is similar to the discretion of courts in the performance of duties imposed on them by law. The power to exercise discretion which the law must vest in public officials under certain circumstances carries with it a corresponding — and very great — responsibility, a responsibility to see that it is exercised with caution and always with the realization that nothing can attain a greater degree of despotism than an abuse of this necessary power.
In paragraph 2 of the order of December 20th (heretofore quoted), the lower court dealt with the requirements of Section 124.04, Florida Statutes 1951, F.S.A. The County Commissioners insist that the effect of this part of the order is to place on the County Commissioners the burden of showing the necessity for disregarding election district or precinct lines in fixing the boundaries of County Commissioners’ District, and that such conclusion is erroneous.
In Prince v. State ex rel. Williams, 1946, 157 Fla. 103, 113, 25 So.2d 5, 10, decided prior to the adoption by the Legislature of what is now Section 124.04, Florida Statutes 1951, F.S.A., supra, in speaking of the then Section 124.05, Florida Statutes 1941, F.S.A., a similar statute, we said:
“ * * * there is no valid requirement that the County Commissioners’ districts shall be so created so as to conform to the election districts.
“It is the view [of the Court] that the County Commissioners’ districts may be created so as to be as nearly as possible equal in proportion to population and then the election districts may be changed to conform to the County Commissioners’ districts.”
We construe the lower court’s order as recognizing this view to be the law, but as holding that election district or precinct lines should not be ignored except as a last resort. We think the question of ignoring precinct lines is a matter within the sound and reasonable discretion of the. County Commissioners. If they should conclude that in order to comply with the constitutional mandate, the election district or precinct boundary lines also should be changed, it is within their province so to do so long as there is compliance with the requirements of Section 124.04, supra, that an election district shall not lie in more than one County Commissioners’ District. As a matter of fact, we can see where, under *799 some conditions, it would be necessary to do so. If, in redistricting, the existing county election district or precinct lines are not followed by the County Commissioners, the burden would be on the one who questioned the results to demonstrate that such discretion had been unreasonably exercised.
We do not agree with the conclusion reached by the lower court “that the 1945 State Census is the only proper basis for this reapportionment available,” nor do we agree that the lower court was correct in restricting the County Commissioners within limits of a maximum of 7000 and a minimum of 4000 in the five districts. We do not feel that the lower court had the power to lay down the yardstick by which the redistricting should be accomplished. There may be entirely reliable records which could be used to furnish the information on which the redistricting could be accomplished other than records of the official census. While we can think of no better records than the census figures, there may be such. We must assume that if no better records are available the County Commissioners, in the light of this opinion, will avail themselves of these.
The peremptory writ of mandamus appealed from, subject to the observations contained herein, is hereby affirmed.
ROBERTS, C. J., and TERRELL and MATHEWS, JJ., concur.