HOBSON, Justice
(concurring specially). ■■
It is well settled that the exercise of the original jurisdiction of this court to grant or withhold extraordinary writs is subject to the use of sound and informed judicial discretion, Somlyo v. Schott, Fla., 45 So.2d 502. Were the law to permit such writs to be made available of right, on the basis of a formalized procedure, their essential character would be .lost, and any case which could be fitted, or warped, into the requisite pattern might be placed before us for adjudication as an original proposition. The result would be to forge a- Constitutional power incidental to our appellate jurisdiction into an instrument to usurp the prerogatives of the trial courts. ■ Attempts to describe specifically the operation of this principle must fail. It can be ascertained only by a study of multiple decisions, and even precedent must have a. more .limited application to this than to ordinary fields of law. See Everitt *478 v. Board of County Com’rs of Hughes County, 1 S.D. 365, 47 N.W. 296. Thus extraordinary original writs are reserved for extraordinary cases, Newberry v. Harris, 114 Fla. 379, 153 So. 901, but cases they must be. Expediency is no safe or available guide. For sheer want of power, the processes of this court cannot be extended to the solution of abstract legal problems, no matter how perplexing they are or how desirable it may be to find the answer, State ex rel. Crim v. Juvenal, 118 Fla. 487, 159 So. 663; State ex rel. Jackson v. Gray, 125 Fla. 445, 170 So. 137. As the Supreme Court of the United States has said:
“The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it.” California v. San Pablo & Tulare R. Co., 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747.
In State ex rel. Ayres v. Gray, Fla., 69 So.2d 187, decided December 11, 1953, we were asked to determine whether or not an election for Governor would be held in 1954. I agreed that jurisdiction of that case should be taken because of the certainty and real public importance of the question there presented although I was then apprehensive that the distinction between a case fraught with genuine public interest, as distinguished from private or public curiosity, might not always be fully appreciated and that this court might be flooded with cases such as this in blind reliance upon our decision therein. My decision to take jurisdiction in the Ayres case was supported by State ex rel. Hill v. Cone, 140 Fla. 1, 191 So. 50; State ex rel. Taylor v. Gray, 157 Fla. 229, 25 So.2d 492; State ex rel. Davis v. Atlantic C. L. R. Co., 95 Fla. 14, 116 So. 48, certiorari denied 281 U.S. 727, 50 S.Ct. 245, 74 L.Ed. 1144; State ex rel. Fleming v. Crawford, 28 Fla. 441, 10 So. 118, 14 L.R.A. 253;. Florida Industrial Commission v. State, 155. Fla. 772, 21 So.2d 599; Baker v. State, 159 Fla. 286, 31 So.2d 275; Board of Public Instruction of Dade Co. v. State, 150 Fla. 213, 7 So.2d 105; Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963; State ex rel. Sunday v. Richards, 50 Fla. 284, 39 So. 152; and Florida Cent. & P. R. Co. v. State, 31 Fla. 482, 13 So. 103, 20 L.R.A. 419. And see State ex rel. Andrews v. Gray, 125 Fla. 1, 169 So. 501. Here, however, the relator seeks to avail himself of the processes of this court to expunge from the rolls as a qualified candidate for the Democratic nomination for Governor the name of a single respondent after it has already been established, by the decision in the Ayres case, that the 1954 election for Governor will be held. As a matter of mechanics, the action here sought to be compelled by the alternative writ is appropriate, for it is by the “nature of the thing to be done” that the propriety of issuing mandamus is to be determined. Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60; State ex rel. Fleming v. Crawford, 28 Fla. 441, 10 So. 118. And for the proposition that acts of expunging and cancellation may properly be commanded by mandamus see not only the Ayres case, supra, but Frankel v. Spainhour, 159 Fla. 416, 31 So.2d 535; State ex rel. Taylor v. Gray, 157 Fla. 229, 25 So.2d 492; State ex rel. Watson v. Gray, 153 Fla. 462, 14 So.2d 721; and State ex rel. Weathers v. Davis, 143 Fla. 250, 196 So. 487. But in the Ayres case the standing of the relator to sue was placed squarely upon the public importance of the question he raised, whereas the present relator’s standing is subject to the gravest doubt. See Ex parte Levitt, 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493; Com. of Massachusetts v. Mellon, 262 U.S. 447, 43 S. Ct. 597, 67 L.Ed. 1078; Somlyo v. Schott, supra, 45 So.2d 502; State ex rel. Hanna v. Lee, 124 Fla. 588, 169 So. 220 ; Pennock *479 v. State, 61 Fla. 383, 54 So. 1004; and State ex rel. Howarth v. Jordan, 105 Fla. 322, 140 So. 908. In the Ayres case, when the fact of the 1954 gubernatorial election was made dependent upon the decision of this court, the degree of public importance was increased by the prospect of unnecessary official activity and expenditure of State funds if it were decided at a later time that no election should be held. In the present case, however, where only one candidate is involved, a different situation is presented. What potential injury to the State can be shown here? The amount of additional, activity and expense incident to placing another name on the ballot and otherwise accommodating the primary election machinery to one more candidate is de minimis.
Article III, § 5 of the Constitution of Florida, alleged to bar this respondent from the consideration of the voters, prohibits a member of the affected class from being “appointed, or elected” to the office concerned. Not by the broadest construction, to my mind, can this language be said to prevent a candidate from seeking nomination to office, and if the majority opinion in Davis ex rel. Taylor v. Crawford, 95 Fla. 438, 116 So. 41, must be interpreted to the contrary, I am to that extent in disagreement with it. The time-honored statement that the Democratic nomination is tantamount to election, cf. State ex rel. Watkins v. Fernandez, 106 Fla. 779, 143 So. 638, 640, 86 A.L.R. 240, can no longer be made with the confidence necessary to assure this court that it may take judicial notice thereof, and certainly there is and can be no guarantee that respondent Johns will be the Democratic nominee for Governor. Thus it appears that we are at least two major steps away from the point in time (i. e., the fact of being “elected”) which is comprehended by the Constitutional provision sought to be invoked, and it may come to pass that when we arrive at the proper juncture the question now presented to us with such urgency will have become moot. The remote, speculative character of the question affords too shaky a foundation for the relief desired.
Relator in effect contends that logically, although Article III, § 5 uses the word “elected”, it implies a prohibition so broad and sweeping that it reaches the entire process of public choice down to the incipient stage of candidacy for party nomination. But as Mr. Justice Holmes long ago observed, you cannot carry a Constitution out to “logical extremes”, Paddell v. New York, 211 U.S. 446, 450, 29 S.Ct. 139, 53 L.Ed. 275.
I believe that the alternative writ should be quashed for failure on the part of relator at this time to make the showing of public importance necessary to maintain the action, since he has no - direct interest in its outcome. In proceeding further, I am not unmindful of our pronouncements to the effect that a Constitutional interpretation will not be reached as a collateral matter, State ex rel. Jackson v. Gray, 125 Fla. 445, 170 So. 137; State ex rel. Crim v. Juvenal, supra, 159 So. 663, 664, but because the majority of the court has considered the merits I am moved to note that the underlying policy and purpose of Article III, § 5 of the Florida Constitution are admirably expounded in the'majority opinion and will not be further considered here beyond- the observation that in my judgment the intention of the framers would not be effectuated by the issuance of the peremptory writ.
I am constrained to concur in the opinion prepared by Mr. Justice DREW. The so-called “Gomez” clause is not repugnant to, but on the contrary is entirely consonant with, the policy and purpose of Article III, § 5 of the Florida Constitution. I cannot be persuaded to the view that the case of State ex rel. Fraser v. Gay, 158 Fla. 465, 28 So.2d 901, is distinguishable clearly or at all from the instant suit upon the merits. However, upon the question of the propriety of this court assuming original jurisdiction it is readily recognizable as distinct because when instituted the Fraser case undoubtedly presented a question of immediate public importance, and, even in the absence of such a showing, the relator therein had a direct personal interest which should have been suf *480 ficient to enable him to maintain the action'. I would overrule and'recede from the opinion in that case, insofar ¿s it maybe considered' a precedent- for the postulate'that the “Gomez” clause is unconstitutional. ■ '■
With, the growth of our institutions the field of public law has, today become, a complex science, and in applying its principles to new situations the danger of falling into error, always to be considered in the operation of fallible human agencies, is , aggravated by the possibility of far-reaching consequences. In a case such as this, where the question sought to be raised is whether or not a candidate for the highest office the State can bestow is to be barred at the outset from submitting his qualifications for. the traditional and sovereign expression of the public forum, it is easy to sense the direction, in which the greater danger lies.
For the above reasons I hold that the alternative writ should be quashed and the cause dismissed.