## THE KROGER GROCERY & BAKING COMPANY, Appellant, v EVATT, Tax Commr., Appellee.

Board of Tax Appeals

No. 9433.   Decided August 28, 1946.

Dargusch, Caren, Greek and King, Columbus, for appellant.
Hugh S. Jenkins, Attorney General, and Aubrey A. Wendt, Asst. Attorney General, Columbus, for appellee.

### ENTRY

This cause came on for hearing upon an appeal from a final order of the tax commissioner with respect to the application for review and redetermination filed with the tax commissioner by the appellant; which final order resulted in an increased personal property tax assessment against the appellant for the tax years 1941, 1942 and 1943. This cause was heard and submitted upon the transcript of the proceedings before the tax commissioner, the evidence and briefs of counsel.

Appellant is an Ohio corporation with its principal office in Cincinnati, operating retail groceries and meat stores in nineteen states in the Middle West. During the years 1940,

1941 and 1942 it operated 3841, 3594 and 3342 stores, respectively in the several states. The territory is divided into twenty-five branches, each of which is in charge of a branch manager. Each branch is divided into districts consisting of from ten to fifteen stores each; which districts are in charge of district managers. Each store is in charge of a store manager. Appellant during the audit period maintained three classes of deposits—a general office account which was used for general expenses, which was under the control of the assistant treasurer in Cincinnati, branch office accounts which were in charge of the respective branch managers, and so-called minor bank deposits. The last class of deposit is the only one now in question.

Each store maintained a bank account generally in the community in which it was located except in large centers where it frequently happened that two or more stores may use the same bank and make deposits in the same account. Such deposits resulted from the proceeds of sales made by the particular stores. Salaries and certain items of expense were paid in cash by the store managers, but they had no right to make withdrawals from the deposits. When a store was established in a locality appellant agreed with a bank in that community that it would always maintain on deposit 75 to 100% of the proceeds of a week's sales made by such store. This was done for the purpose of insuring to the store the facilities of the bank which were necessary for the operation of the store. This amount would fluctuate as the business of the stores increased or decreased. While both the principal office at Cincinnati and the branch manager had the right to withdraw beyond said reserve herein referred to as a minimum deposit and the excess above that amount, such minimum deposit was always maintained in the bank. The branches operated quite independently of the principal office, and as a matter of practice only the branch managers exercised the right of withdrawal of the excess over the minimum deposit. These withdrawals were used to pay the expenses of the branches which were not paid in cash by the store managers, and any surplus was then transmitted to the Cincinnati office. The tax commissioner found that 71.227% of said excess of store deposits outside of Ohio was transferred directly or indirectly to the depositary account at Cincinnati which was used for the general operations of the appellant, and proceeded to assess 71.227% of such minimum deposits maintained outside of the state. There is no dispute as to the amount of such minimum deposits, the only question being as to whether they were taxable in this state.

On consideration of said appeal and of the facts presented on the hearing and submission of this case, the Board of Tax Appeals finds and determines that in so far as the constitutional requirements of due process of law in the taxation of intangible property is concerned, the deposits here in question, as intangible property, were subject to the jurisdiction and authority of Ohio, the domiciliary state, for purposes of taxation; and this follows irrespectively of the questions whether these deposits are likewise taxable in such other states, or not. Fidelity and Columbia Trust Company v Louisville, 245 U. S. 54, 62 L. Ed. 145; **Cleveland and Western Coal Company v O'Brien, Treasurer, 98 Oh St 14;** Cream of Wheat Company v Grand Forks County, 253 U. S. 329, 64 L. Ed. 934; Curry v McCandless, 307 U. S. 357, 368, 83 L. Ed. 1339, 1348; Graves v Schmidlapp, 315 U. S. 657, 86 L. Ed. 1027. In this view and under the provisions of §5328-1 GC, the deposits here in question made by the appellant—a corporation organized under the laws of Ohio, and by legal intendment a resident of this state—must be held to be taxable unless such taxability is negatived by the provisions of this or of some other section of the General Code in their application to the facts of this case. As to this, §5328-1 GC, provides: "All moneys, credits, investments, deposits, and other intangible property of persons residing in this state shall be subject to taxation, excepting as provided in this section or as otherwise provided or exempted in this title." This section further provides, generally, that intangible property of the kinds and classes mentioned in §5328-2 GC (including deposits), used in and arising out of business transacted in this state by, for or on behalf of a non-resident person, shall be subject to taxation; and more specifically to the point, so far as this case is concerned, this section of the General Code further provides as follows: "And all such property of persons residing in this state used in and arising out of business transacted outside of this state by, for or on behalf of such persons, * * * shall not be subject to taxation." Sec. 5328-2 GC, in so far as the same is here applicable, provides:

"Property of the kinds and classes herein mentioned, when used in business, shall be considered to arise out of business transacted in a state other than in which the owner thereof resides in the cases and under the circumstances following: * * *

"In the case of deposits (other than such as are used in business outside of such other state), when withdrawable in the course of such business by an officer or agent having an

office in such other state; but deposits representing general reserves or balances of the owner thereof, maintained for the purposes of his entire business wherever transacted, shall be considered located in the state wherein the owner resides, if an individual, or wherein its actual principal executive office is situated, if a partnership or association, or under whose laws it is organized, if a corporation, by whomsoever they may be withdrawable."

The above quoted provisions of §§5328-1 and 5328-2 GC, should, of course, be read in the light of the reciprocal provisions of §5328-2 GC, which reads as follows:

"The provisions of this section shall be reciprocally applied, to the end that all property of the kinds and classes mentioned in this section having a business situs in this state shall be taxed herein and no property of such kinds and classes belonging to a person residing in this state and having a business situs outside of this state shall be taxed. It is hereby declared that the assignment of a business situs outside of this state to property of a person residing in this state in any case and under any circumstances mentioned in this section is inseparable from the assignment of such situs in this state to property of a person residing outside of this state in a like case and under similar circumstances."

And in connection with the statutory provisions above quoted it is pertinent to note the provisions of §5325-1 GC, defining the term "used in business" with respect to the taxation of tangible and intangible personal property. Touching the question here presented this section provides:

"Moneys, deposits, investments, accounts receivable and prepaid items, and other taxable intangibles shall be considered to be 'used' when they or the avails thereof are being applied, or are intended to be applied in the conduct of the business, whether in this state or elsewhere."

Inasmuch as the appellant, as a corporation organized under the laws of the state of Ohio, is a legal resident of this state, each of the states in which the deposits here in question are located answers to the description of "such other state" as this term is used in §5328-2 GC. The Supreme Court of this

state in the case of **Ransom and Randolph Company** v **Evatt, 142 Oh St 398, 404,** in construing the provisions of §5328-2 GC, in their application to deposits of an Ohio corporation in banks in other states, said:

"**Sec. 5328-2 GC,** (115 O. L. 555), in fixing business situs provides that where **deposits** are used in business outside of such other state or where such **deposits** are not withdrawable by an officer or agent having an office in such other state, such **deposits** have a situs at the residence of the taxpayer".

In the case of **Kettering, Inc.** v **Evatt, 144 Oh St 419, 425,** the Supreme Court construing the provisions of §§5328-1 and 5328-2 GC, in their application to the bank deposits in this state of a corporation organized under the laws of another state, said that the Ohio bank deposits of a foreign corporation or other non-resident are to be accorded an Ohio situs for the imposition of taxes "where they are used **exclusively** in business transacted in Ohio **and** are withdrawable by an officer or agent having an Ohio office. It logically ensues that where Ohio bank deposits of a foreign corporation are used by it in transacting its business generally, within and without Ohio, the sections do not contemplate that such deposits shall be taxed locally". (Emphasis ours.)

Although normally and in the usual course of business the minimum deposits here in question were not withdrawable, the excess deposits over and above such minimum were generally and in about 90% of the cases withdrawable by the branch managers in the several states in which such deposits were located. And although there is nothing in the evidence in the case touching this point, it may be presumed that where appellant's stores in particular communities were discontinued, and the appellant's accounts in the several banks in such communities were closed, the minimum deposits therein as well as the deposits in excess of such minimum were withdrawable by the several branch managers, and were distributed and used in the same manner as such excess deposits were distributed and used; so that it may be said that the deposits here in question were withdrawable in the course of business "by an official or an agent having an office in such other state", within the purview of this provision of §5328-2 GC.

Since under §5328-2 GC, the provisions of this section are to be reciprocally applied, it follows, giving effect to the views indicated by the Supreme Court in Ransom and Randolph Company and Kettering, Inc. cases above noted, that before it

can be said that the deposits here in question are non-taxable in this state under the statutory provisions here under consideration, it must appear that the deposits here in question were used **exclusively** in the several states in which such bank deposits were located. As to this it appears, however, that although, as above noted, these deposits were withdrawable by the several branch managers of the appellant company and to the extent of approximately 29% thereof were used in the business of such branch offices and of the stores controlled by the branch offices, approximately 71% of these deposits were withdrawable for the use of the main office of the company at Cincinnati and for the use of the company generally in the operation and management of its business. It follows from this that we are required to ascribe an Ohio situs to the bank deposits here in question and to sustain the action of the tax commissioner complained of in this appeal; and this without reference to the further question here presented as to whether or not these minimum deposits are to be considered as general reserves of the appellant company within the purview of the applicable provision of §5328-2 GC, above quoted.

Upon the considerations above noted and discussed, it is by the board of tax appeals considered and ordered that the final order of the tax commissioner complained of in this appeal be, and the same hereby is affirmed.

BOARD OF TAX APPEALS