NATIONAL GYPSUM COMPANY v DEPARTMENT OF TREASURY

Docket No. 64875. Submitted March 3, 1983, at Lansing.—Decided
September 14, 1983.

> The Department of Treasury assessed an intangibles tax defi-
> ciency against the National Gypsum Company for the years
> 1972, 1973, and 1974. The reason for the deficiency was the
> inclusion by the department of National Gypsum's income-pro-
> ducing intangible personal property in the intangibles tax base.
> National Gypsum petitioned the State Board of Tax Appeals.
> Following hearings, the board issued an opinion and order
> cancelling the intangibles tax assessment against National
> Gypsum on the ground that the income-producing intangible
> personal property, commercial paper, did not acquire taxable
> situs in Michigan merely because the income and proceeds
> from the paper were made available for use by plaintiff's
> Michigan operations. The department appeals. *Held:*
>
> There is no basis for imposition of any tax upon the intangi-
> bles at issue since there has been no showing of the intangibles'
> use in Michigan. The availability, or even the use of income
> from an intangible, as compared with the use of the intangible
> itself, is insufficient to confer the taxable situs necessary for
> imposition of intangibles tax. The board's order cancelling the
> department's assessment of taxes is affirmed.
>
> Affirmed.

1. Taxation — Situs — Intangible Property — Nonresident Busi-
ness.

> A situs for taxable jurisdiction is not established for an intangi-
> bles tax where the only connection between the state and
> intangible property of a nonresident business is that the inter-

References for Points in Headnotes

[1, 3] 71 Am Jur 2d, State and Local Taxation § 671 *et seq.*
Property tax: business situs of intangibles held in trust in state
other than beneficiary's domicil. 59 ALR3d 837.
[2] 71 Am Jur 2d, State and Local Taxation § 92 *et seq.*
[4, 5] 71 Am Jur 2d, State and Local Taxation § 197.
[5] 71 Am Jur 2d, State and Local Taxation § 456.

est produced by the intangibles is available as part of the general cash account for use by the Michigan branch of the nonresident business.

2. TAXATION — STATE — CONSTITUTIONAL LAW.

Michigan's taxing power is constitutionally limited to property at least constructively within its jurisdiction.

3. TAXATION — INTANGIBLE PROPERTY — SITUS — NONRESIDENT BUSINESS — JURISDICTION.

A situs for taxable jurisdiction is not established where the state treasury's assessment is based upon a number of receivables located outside the state of Michigan which bear no relation to Michigan other than the fact that income from interest paid on these receivables is sent to Michigan for use in the taxpayer's Michigan operations; the use of income in Michigan from intangible property located in another state does not generate a Michigan tax situs in that property.

4. TAXATION — INTANGIBLE PROPERTY — JURISDICTION.

A state, in order to secure jurisdiction to tax an intangible, must either (1) have sovereignty over one of the parties to the obligation which it represents, or (2) have conferred a benefit or protection to the existence of the intangible, or at the very least, to the use of the intangible in connection with the taxpayer's business in that state.

5. TAXATION — INTANGIBLE PROPERTY — INCOME.

Income from intangible property is conceptually distinguishable from the underlying intangible; the income is simply money, a separate intangible asset which carries its own intangibles tax liability; the intangible tax on the underlying asset must be recognized for what it is: a tax upon the privilege of creating, maintaining or otherwise using that asset in Michigan, not a tax upon the amount of a separate intangible asset which it may generate (MCL 205.131[b]; MSA 7.556[1][b]).

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Peter S. Sheldon),* for appellee.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Terry P. Gomoll,* Assistants Attorney General, for appellant.

Before: R. B. Burns, P.J., and Bronson and R. E. Robinson,* JJ.

Per Curiam. The Department of Treasury appeals as of right from an order of the State Board of Tax Appeals (BTA) cancelling the department's assessment of intangible property taxes on certain commercial paper. We find no error and affirm.

We believe that the BTA acted properly in finding that National Gypsum's commercial paper did not acquire taxable situs in Michigan merely because the income and proceeds from that paper were made available for the use of National Gypsum's Michigan operations. In deciding this issue, we have been called upon to review the issue of whether the now-repealed proviso to MCL 205.131(c); MSA 7.556(1)(c) extends situs to the commercial paper in question.[1]

---

* Retired circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCL 205.131(c); MSA 7.556(1)(c) provided as follows:

"(c) The 'situs' of intangible personal property for the purpose of taxation under the provisions of this act shall be the domicile of the owner thereof, except that any intangible personal property, not otherwise exempt under the laws of this state, owned by a person having his domicile outside of this state but used in connection with the conduct of his business in Michigan, or placed in the hands of a manager or agent in Michigan to the extent that such intangible personal property is invested in a course of repeated transactions in obligations of persons residing in Michigan or secured by property located in Michigan, shall be deemed to have a situs at the place of business, or where such manager or agent resides, as the case may be, within this state; and except that intangible personal property owned by a person domiciled in Michigan but used in connection with the conduct of his business outside of Michigan, or placed in the hands of a manager or agent outside of Michigan to the extent that such property is invested in a course of repeated transactions in obligations of persons residing outside of Michigan or secured by property located outside of Michigan, shall be deemed not to have a situs in Michigan: *Provided, That in the case of intangible personal property used in connection with the conduct of the owner's business both within and outside the state of Michigan, all such property shall be deemed to have a 'situs' in this state to the extent of the percentage of the whole of such property as determined by the allocation formula set forth in section 12 of this act."* (Emphasis added.)

In two recent decisions, panels of this Court have found that the availability, or even the use of income from an intangible, as compared with use of the intangible itself, is insufficient to confer taxable situs under the proviso. In *E F MacDonald Co v Dep't of Treasury,* 62 Mich App 626; 233 NW2d 678 (1975), the department attempted to tax certain intangibles arising from business activities undertaken by MacDonald in California which were evidenced by a note made in Ohio and by certain accounts receivable. The only nexus between Michigan and the intangibles in question was the fact that income derived from the accounts receivable was deposited in MacDonald's general cash account, which was available for use by MacDonald's Michigan branch. The department in *MacDonald* did not establish that MacDonald's Michigan branch had ever actually withdrawn any funds from the general cash account. This Court noted first that Michigan's taxing power is constitutionally limited to property at least constructively within its jurisdiction and emphasized the requirement that property must have a taxable situs in Michigan before any tax may be imposed. 62 Mich App 629-630. The Court then observed:

"The Board of Tax Appeals applied the facts of the case to the proviso clause of the statute and decided that the record did not support the conclusion that the intangible assets were 'used in the conduct' of MacDonald's business in Michigan. The use in Michigan of income of the intangible, as compared with the use of the intangible itself, was held to be insufficient to constitute situs under the statute." 62 Mich App 633-634.

The Court in *MacDonald* went on to conclude that an intangible could not constitutionally acquire

situs in Michigan merely because its income is available for use by Michigan branches of a foreign corporation. 62 Mich App 637.

The Court went one step further in *Boise Cascade Corp v Dep't of Treasury*, 88 Mich App 626; 278 NW2d 699 (1979), *lv vacated* 414 Mich 857 (1982). In *Boise Cascade*, the department tried to distinguish *MacDonald, supra,* by showing that income from intangibles located outside Michigan had actually been transferred to Cascade's Michigan branch, for use by that branch. This Court refused to find a distinction between making income from an intangible available for use and actual use of the income. Focusing upon the above-quoted portion of the opinion in *MacDonald,* the Court concluded that a Michigan operator's actual use of income from an intangible is insufficient to confer a taxable situs under MCL 205.131(c); MSA 7.556(1)(c). 88 Mich App 629.

The decisions in *MacDonald, supra,* and *Boise Cascade, supra,* are sound; the result in each is consistent with constitutional parameters governing states' taxation of intangibles, as set forth in the seminal case of *Curry v McCanless,* 307 US 357; 59 S Ct 900; 83 L Ed 1339 (1939). In *Curry,* the Supreme Court indicated that in order for a state to secure jurisdiction to tax an intangible, it must either (1) have sovereignty over one of the parties to the obligation which it represents, or (2) have conferred a benefit or protection to the existence of the intangible, or at the very least, to the "use" of the intangible in connection with the taxpayer's business in that state.

Even construing the statutory term "use" most broadly, the term connotes some active process in connection with the intangible asset itself (such as its creation, maintenance, manipulation or sale) as

a tool designed to advance the taxpayer's business in this state. We reject the argument advanced by the department, echoing the dissenting opinion in *Boise Cascade, supra,* that the sole "use" of an intangible asset is collection of any income which it may generate. An intangible asset may have other "uses", such as providing security for other transactions or serving as a part of a company's nonincome producing asset base.

Furthermore, income from an intangible is conceptually distinguishable from the underlying intangible; the income is simply money, a separate intangible asset which carries its own intangibles tax liability, MCL 205.131(b); MSA 7.556(1)(b). The intangibles tax upon the underlying asset must be recognized for what it is—a tax upon the privilege of creating, maintaining or otherwise "using" that asset in this state, not a tax upon the amount of a separate intangible asset (money) which it may generate.

In the present case, the department raises an argument identical to that which it advanced in *Boise Cascade.* However, here, as in *Boise Cascade,* the department has failed to show that the intangibles in question, commercial paper, have been created, maintained or otherwise "used" in Michigan within the meaning of MCL 205.131(c); MSA 7.556(1)(c). There has been no showing that the certificates have been kept here, that either the paper or any proceeds from its sale have been used as security for Michigan transactions, or that decisions regarding use of the paper or proceeds from its sale were made by Michigan officers of National Gypsum's business. As there has been no showing of the intangibles' "use" in Michigan, there can be no showing that Michigan has met the constitutional requirement of providing some benefit or

protection in connection with their use. *Curry, supra.* Accordingly, there can be no basis for imposition of any tax upon these intangibles. *MacDonald, supra; Boise Cascade, supra.*

Finding no significant distinction between the present case and *Boise Cascade, supra,* we perceive no reason why the result of this case should differ. Accordingly, we conclude that the BTA's order cancelling the department's assessment of taxes must be affirmed.

Affirmed.