386    May 13, 2014    No. 52

IN THE OREGON TAX COURT
REGULAR DIVISION

Jacquelyn PRESTIDGE,
Trustee of the Mifflin and Nancy Thomas Trust "A,"
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5137)

Plaintiff (taxpayer) appealed from a Magistrate Division decision as to inheritance tax. Taxpayer argued that in subjecting its trust's assets or interest in such assets to taxation, Oregon violated the Due Process Clause of the United States Constitution. Taxpayer argued that certain language from a decision of the United States Supreme Court imposed a constitutional requirement, concluding that the requirement was not present in the taxation by Oregon. Granting Defendant (the department's) motion, the court held that as both grantors of the trust were domiciled in Oregon at their times of death, the constitutional basis for assertion by Oregon of its taxing power was the relationship of Mifflin Thomas with the state of Oregon at the time of his death.

Oral argument on cross-motions for summary judgment was held November 12, 2013, in the courtroom of the Oregon Tax Court, Salem.

Daniel C. Re, Hurley Re PC, Bend, filed the motion and argued the cause for Plaintiff (taxpayer).

Nathan Carter, Assistant Attorney General, Department of Justice, Salem, filed the cross-motion and argued the cause for Defendant Department of Revenue (the department).

Decision for Defendant rendered May 13, 2014.

**HENRY C. BREITHAUPT, Judge.**

## I.  INTRODUCTION

This inheritance tax case is before the court on cross-motions for summary judgment. Plaintiff (taxpayer) and Defendant (the department) have entered into a stipulation of facts and other uncontroverted material in the record provides additional facts or context for stipulated facts.

## II.  FACTS

Taxpayer is the representative of decedent Mifflin Thomas (Mifflin). For many years Mifflin was married to Nancy Thomas (Nancy). Together Mifflin and Nancy accumulated significant wealth, represented primarily by shares of stock in major companies.

Prior to Nancy's death, Mifflin and Nancy established and funded a trust (the Mifflin and Nancy Trust) that contemplated the establishment of three sub-trusts upon the death of the first to die of Nancy and Mifflin.[1] In 2001 Nancy predeceased Mifflin and at the time of her death, both she and Mifflin were domiciled in Oregon. As provided for in the trust instrument, three trusts were then established.

The first sub-trust established at the time of Nancy's death, called the Survivor's Trust, became the owner of all of Mifflin's separate property and his community property interest in any property. That community property interest derived from a substantial period of residence of the couple in California. The assets of this trust are not involved in this case.

The second sub-trust established at the time of Nancy's death, the Bypass Trust, was a trust designed to take advantage of certain federal estate tax generation-skipping trust rules. It was to be funded with a portion of the separate property of Nancy or her interest in community property. The assets of this trust are not involved in this case.

The third sub-trust established at the time of Nancy's death was called the QTIP Trust. After the funding of the Bypass Trust, the remainder of Nancy's separate property and her community property interest in any property was placed in the QTIP Trust. The QTIP Trust was designed to qualify under federal estate tax law as vesting in Mifflin an interest of such magnitude that the transfer would qualify for the marital deduction in computing the federal estate tax liability of the estate of Nancy. As will

---

[1] The original trust agreement for the Mifflin and Nancy Trust was replaced by an amendment and complete restatement and that document is treated as the Mifflin and Nancy Trust agreement, except as it might have been later amended.

be discussed in more detail below, the federal *quid pro quo* in such cases requires that any assets in the QTIP Trust at the time of Mifflin's death be included in his estate for purposes of computing the federal estate tax liability of his estate.

At the time of Nancy's death, Mifflin, as the surviving spouse, became the sole trustee of the Mifflin and Nancy Trust and made the allocations of assets called for by that trust such that the sub-trusts were funded in accordance with the terms of the Mifflin and Nancy Trust.

Consistently with federal estate tax law, the QTIP Trust provided that Mifflin had a right to receive all income of the trust during his life, as well as such principal the trustee, originally Mifflin, might deem proper or necessary to provide him with reasonable support, maintenance, and care, after taking into consideration his other means of support.

The Mifflin and Nancy Trust provided that any trustee could resign at any time upon 30 days notice. If neither Mifflin nor Nancy were willing or able to serve as trustee, Northern Trust of California was named as the successor trustee.

Any principal income beneficiary of any trust could, as to such trust, change a corporate trustee of such trust to a qualified corporate trustee. In addition, such a principal income beneficiary could move the legal situs of the trust for reasons of personal convenience by selecting a qualified corporate trustee *outside the state of California*.

The Mifflin and Nancy Trust was generally to be governed by the law of the state of California. If neither Mifflin nor Nancy were willing or able to serve as trustee, Northern Trust of California was named as the successor trustee.

In 2003, after the death of Nancy, Mifflin executed an instrument amending provisions of his Survivor's Trust.

In 2004 Mifflin, purporting to act as the sole income beneficiary of the QTIP Trust, executed an instrument in which he resigned as trustee of that trust, effective

on the declination of Northern Trust of California to serve as trustee. He also purported to appoint Wells Fargo Bank, N.A., Carmel California Branch, to serve as successor trustee of the QTIP Trust. Mifflin stated that Wells Fargo was to administer the QTIP Trust from its Carmel, California branch.

Mifflin also purported, pursuant to Article III C of the Mifflin and Nancy Trust, to change the legal situs of the QTIP Trust from the state of Oregon to the state of California. Finally, but only to be effective after appointment of Wells Fargo as successor trustee and the change of legal situs, Mifflin stated that he renounced his power to appoint a successor trustee or to change the legal situs of the QTIP Trust.[2]

Mifflin died in 2006. At the time of his death he was domiciled in Oregon. By reason of the provisions of the QTIP Trust, his interests in income and principal of the trust terminated and those assets passed to other persons in accordance with the terms of the trust (the remainder beneficiaries). The assets in the trust were the shares of stock in various corporations or interests in mutual funds.

The legal representative for Mifflin filed a federal estate tax return and an Oregon inheritance tax return following the death of Mifflin. On the Oregon inheritance tax return the tax due to Oregon was computed on the basis that the assets in the QTIP Trust were subject to Oregon inheritance tax. Within the allowable time, the representative filed an amended return with the tax computed on the basis that the assets in the QTIP Trust were not subject to Oregon inheritance tax and claimed a refund. The claim for refund was denied and an appeal to this court followed. The present case follows a decision in the Magistrate Division adverse to taxpayer.

---

[2] The stipulation of the parties appears to treat as effective these actions of Mifflin. The court notes that the action of Mifflin in purporting to change the legal situs of the trust was facially inconsistent with the provisions of the trust, as he purported to appoint a trustee within the state of California even though the trust only permitted such appointment of a trustee outside the state of California. In any event, taxpayer at the hearing on this matter indicated that she was not relying on the situs of the trust or the location of the trustee as a basis for her opposition to the tax in question.

### III.    ISSUE

The issue for decision is whether Oregon may, consistently with the Due Process Clause of the 14th Amendment to the United States Constitution (the Due Process Clause), impose an inheritance tax in this case.

### IV.    ANALYSIS

In her briefing and argument in this court, taxpayer has conceded that she makes no claim that the Oregon inheritance tax statutes do not reach the assets in question. Rather, taxpayer asserts that in subjecting such assets or interest in such assets to taxation, Oregon has violated the Due Process Clause.

Taxpayer's concession as to the reach of Oregon law is well taken. ORS 118.010 subjects to taxation all transfers subject to federal estate tax.[3] There is no question that the assets in the QTIP Trust were subject to federal estate tax on the death of Mifflin. They were, therefore, either subject to Oregon inheritance tax or the basis for the computation of the tax liability.

The Due Process Clause serves to place a limit on state taxation of persons, property or events that do not have a constitutionally adequate connection to the taxing state. In the case of persons or tangible assets present in a state, there is no question that such a connection exists, at least for purposes of appropriately apportioned income or property taxes.

Intangible property presents—and has historically presented—a more difficult question, for the reason that the location of intangible property is difficult, if not impossible, to locate in a physical or geographic sense. That problem is at the heart of this case.

The position of the department is relatively straightforward. The department observes that Mifflin was, at the time of his death, a domiciliary of Oregon. It was his death that resulted in the transfer from him to other beneficiaries all of the beneficial interest in the intangible assets

---

[3] Except as otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2007.

of the QTIP Trust. As he, an Oregon domiciliary, was the sole beneficial owner of those assets, the department argues that adequate connection existed between Oregon and that transfer of those assets.

Taxpayer can point to no case law authority to support her position as to the constitutionality of the Oregon inheritance tax as applied in this case. Instead, taxpayer takes certain language from a decision of the United States Supreme Court, construes that language as imposing a constitutional requirement, and then concludes that the requirement is not present in the taxation by Oregon at issue in this case.

The case in question is *Curry v. McCanless*, 307 US 357, 59 S Ct 900, 83 L Ed 1339 (1939). In that case the court overruled earlier decisions and concluded that more than one state could have constitutionally adequate connections to intangible property such that more than one state could tax the transfer at death of an interest in such intangibles. In reaching that conclusion the court engaged in a broad examination of the nature of intangible property and the relationship of such property to taxpayers. Distinguishing the rules as to taxation of tangible property that can be located in one place, the court said:

> "Very different considerations, both theoretical and practical, apply to the taxation of intangibles, that is, rights which are not related to physical things. Such rights are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to *those persons whose relationships are the origin of the rights*."

307 US 357, 365-66 (emphasis in taxpayer's brief). Taxpayer takes the emphasized language in that quote as a major premise. As her minor premise, taxpayer asserts that Nancy was the origin of the rights in the assets held by Mifflin under the QTIP Trust. Taxpayer then concludes that any taxation of the assets or interest in the assets in the QTIP

Trust could only occur in respect of Nancy but not Mifflin. As the taxpayer stated in her brief:

"Nancy Thomas was the person who was the origin of the remainder beneficiaries [*sic*] rights and interests in the QTIP TRUST property."

The first and most important problem with taxpayer's logic is that the major premise is incorrect. It is incorrect because the "origin of rights" language in *Curry* does not refer to a transferor or transferee. Read correctly, "rights" in *Curry*—the essence of intangible property—have their origin in "relationships" among persons, natural or corporate.

The language refers not to the relationship of transferor and transferee as to a share of stock. Instead it refers to the relationship of shareholder and corporation. That is a relationship the law recognizes and out of which enforceable rights and obligations constituting what we call intangible property arise.

Therefore, the language upon which taxpayer relies does not support taxpayer's conclusion. Other language from *Curry* does, however, shed light on the proper analysis. Further in the opinion, the court recognized:

"From the beginning of our constitutional system control over the person at the place of his domicile and his duty there, common to all citizens, to contribute to the support of government have been deemed to afford an adequate constitutional basis for imposing on him a tax on the use and enjoyment of rights in intangibles measured by their value. Until this moment that jurisdiction has not been thought to depend on any factor other than the domicile of the owner within the taxing state ***."

307 US at 366-67. This court is of the opinion that this observation answers the question presented in this case. The constitutional basis for assertion by Oregon of its taxing power is the relationship of Mifflin with the state of Oregon at the time of his death.

It is the case that Mifflin did not have legal title to the intangibles in question. However he had all of the beneficial interest in such assets, to the exclusion, during his life,

of any interest of any other person. That is a constitutionally adequate connection between Oregon and Mifflin, or assets in which he had an exclusive beneficial interest.

There are other considerations that support this conclusion. Although taxpayer seeks to associate the intangibles in the QTIP Trust entirely with Nancy, Mifflin in fact had significant relationships to those assets and the trust in which they were held, even beyond his interest as the sole beneficial owner during his life.

Upon the death of Nancy, Mifflin acted as the sole trustee of the trust and in this capacity had the authority to, and did, determine which assets were to be allocated to the Bypass Trust. By definition, separate property of Nancy and her community property interests not allocated to the Bypass Trust became the corpus of the QTIP Trust. Mifflin therefore had an important role in determining what assets went into the QTIP Trust.[4]

Further, it is important to observe that the Mifflin and Nancy Trust carried out a comprehensive and coordinated estate plan designed to minimize transfer taxes within allowable rules. At the death of Nancy this goal was achieved, in part, by transfers into the QTIP Trust. For purposes of the federal estate tax the amount in the QTIP Trust was considered as an interest of the surviving spouse, Mifflin, such that the amount in the trust qualified for the marital deduction under IRC section 2056 in computing the federal estate tax obligation at the time of Nancy's death.

The transfer tax savings achieved by the use of the QTIP Trust were not limited to the federal estate tax. At the time of Nancy's death, she was a domiciliary of Oregon and required to pay an Oregon inheritance tax. The amount of that tax was, at the time of her death, set at the maximum amount of the credit for state death taxes allowed under federal estate tax law (the so-called "pick-up" tax). ORS 118.010(2) (1999). The amount of that credit, and hence the amount of Oregon inheritance tax, was directly proportional to the size of the federal taxable estate. *See* IRC § 2011. The

---

[4] Not an unlimited role as he had to follow federal funding rules.

result was that, at the time of Nancy's death, the smaller the federal taxable estate, the smaller the Oregon inheritance tax obligation.

Federal law provides that assets in the QTIP Trust were, on the death of Mifflin, considered to pass from Mifflin to the remainder beneficiaries of the QTIP Trust. IRC section 2044(c) provides:

> "For purposes of this chapter and chapter 13, property includible in the gross estate of the decedent under subsection (a) shall be treated as property passing from the decedent."

ORS 118.007 provides:

> "Any term used in ORS 118.005 to 118.840 has the same meaning as when used in a comparable context in the laws of the federal Internal Revenue Code relating to federal estate taxes, unless a different meaning is clearly required or the term is specifically defined in ORS 118.005 to 118.840."

Accordingly, Oregon law adopts the federal definition of transfer. That makes the passage of the assets of the QTIP Trust to the remainder beneficiaries a transfer of property from Mifflin.

Taxpayer however maintains that the pattern of use of the QTIP Trust and deferral—but not elimination—of taxation at the federal level cannot be followed in Oregon, even though at the relevant times—the times of death—both Nancy and Mifflin were domiciled in Oregon. The result of that argument is that persons domiciled in Oregon would be able to transfer unlimited amounts of property to future generations by way of use of QTIP trusts, all without any Oregon inheritance tax obligation coming into existence. This court does not read the Due Process Clause as requiring such a result.

## V.   CONCLUSION

For the foregoing reasons, the cross-motion of the department for summary judgment is granted and the motion for summary judgment of the taxpayer is denied. Now, therefore,

IT IS ORDERED that Defendant's Cross-Motion for Summary Judgment is granted; and

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is denied.